# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ALISA JOHNSON, LAURA DAY, and KOREY THOMAS,<br><br>    Plaintiffs,<br><br>v.<br><br>ACTIVEHOURS, INC. d/b/a EARNIN,<br><br>    Defendant. | Case No. 1:24-cv-02283-JRR |

## DEFENDANT ACTIVEHOURS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

                                                      **Page**

LEGAL STANDARD ............................................................................................................... 3

ARGUMENT ........................................................................................................................... 4

    I.    Plaintiffs' First Cause of Action Should be Dismissed Because Plaintiffs Cannot State a Viable Maryland Consumer Loan Law Claim Against EarnIn ............................................................................................................. 4

    II.    Plaintiffs' Second Cause of Action Fails Because Plaintiffs Have Not Adequately Stated a Claim With Particularity Under the Maryland Consumer Protection Act ................................................................................ 9

    III.    Plaintiffs' Third Cause of Action Should be Dismissed Because EarnIn Does Not Extend Credit, Is Not a Creditor, and, Therefore, TILA Does Not Apply ................................................................................................................ 12

CONCLUSION ...................................................................................................................... 17

This Court should dismiss Plaintiffs' claims set forth in their First Amended Complaint ("Amended Complaint") because they have not pled sufficient facts to plausibly show that they may prevail under Federal Rules of Civil Procedure 9 and 12, as well as the standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

This class action arises from Plaintiffs' desire to use what is often referred to as an "earned wage access" service to periodically obtain early, non-recourse access to the pay that they earn in their respective employment positions. Activehours, Inc. d/b/a EarnIn ("EarnIn") operates a mobile app called "EarnIn" that provides customers access to wages that they have earned but have not yet been paid. *See* Am. Compl. ¶ 16; *see also* Ex. A, EarnIn's Webpage, *available at* https://www.earnin.com/, last accessed November 14, 2024.[1] Plaintiffs Alisa Johnson, Laura Day, and Korey Thomas sought and utilized this service through EarnIn's app to access *their own pay* and, in some instances, continued to utilize EarnIn's service after filing this action. As EarnIn explicitly discloses on its app and on its website, Plaintiffs were under no obligation to pay EarnIn for providing Plaintiffs with access to their wages. Moreover, EarnIn had no legal right to take action against Plaintiffs or recoup from Plaintiffs the earned wages to which EarnIn provided access if Plaintiffs did not subsequently return those amounts to EarnIn. Further, any tips Plaintiffs paid and "Lightning Speed" fees they incurred in connection with accessing their earned pay were entirely voluntary aspects of the transaction. Plaintiffs *chose* to pay such tips and fees for some

---

[1] Although a Court must treat a motion to dismiss as one for summary judgment if it considers matters outside of the pleadings, a Court may consider "documents that are explicitly incorporated by reference or attached as exhibits to the complaint, as well as authentic documents submitted by the movant that are integral to the complaint, without converting the motion to one for summary judgment." *Talley v. Nat'l Gen. Car Ins.*, No. ADC-20-16, 2021 WL 4290596, at *2 (D. Md. Sept. 21, 2021) (citing *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)). Plaintiffs' Amended Complaint includes screenshots of EarnIn's mobile application and allegations based on statements on EarnIn's website and in its Terms of Service; therefore, those documents are incorporated by reference, integral to the Amended Complaint, and may be considered as part of EarnIn's Motion to Dismiss. *See, e.g.*, Am. Compl. ¶¶ 14-20, 35-40.

transactions and *chose* not to pay them for others.[2]

Despite this, Plaintiffs' first claim (Count I) argues that EarnIn is a "lender" under the Maryland Consumer Loan Law ("MCLL") and, therefore, is required to be licensed to issue "loans" to consumers, including Plaintiffs. Am. Compl. ¶¶ 58-62, 73, 89, 92. Plaintiffs further argue that their *choice* to pay a voluntary fee to access their earned wages more quickly and to provide an *optional* tip to EarnIn for use of the service resulted in an "interest" charge greater than that allowed by Maryland law. *Id.* ¶¶ 65-67, 91-93. According to Plaintiffs, their early, non-recourse access to their own wages constitutes "void and unenforceable" loans and, as a result, they seek a return of all funds reimbursed to EarnIn. *See id.* ¶¶ 92-95. What Plaintiffs really seek is a windfall where they would be doubly paid, i.e., by first receiving the benefit of early access to their wages, and then having EarnIn pay them those wages a second time through the damages sought in this litigation. However, the MCLL applies to traditional loans or extensions of credit made by lenders in the consumer loan business, not to the markedly different earned wage access service EarnIn provides. Therefore, EarnIn is not loaning money, is not required to be licensed as a lender, and is not subject to the MCLL's limit on the interest that can be charged on loans. Moreover, even if EarnIn's service was subject to the MCLL, the voluntary tips and fees users, like Plaintiffs, *chose* to pay do not constitute interest and are not prohibited by the MCLL or other state law. Plaintiffs' erroneous interpretation of Maryland law is fatal to Count I.

Plaintiffs' claim (Count II) that EarnIn violated Maryland's Consumer Protection Act ("MCPA") similarly fails. As a threshold matter, Plaintiffs are mistaken that EarnIn's alleged violations of the MCLL support their MCPA claim because, as noted above, EarnIn did not violate the MCLL. Plaintiffs cannot relabel the alleged violations of the MCLL as an MCPA claim. In addition, Plaintiffs complain that EarnIn violated the MCPA by engaging in "unfair, abusive, or deceptive trade practices" by collecting Lightning Speed fees and tips on advances that were void

---

[2] Plaintiffs allege that they each "signed up for EarnIn's app, obtained EarnIn's cash advance product" and "paid EarnIn's charges," but did not plead details regarding the specifics of the alleged advances other than one example for each Plaintiff. *See* Am. Compl. ¶¶ 22, 48-49.

and unenforceable. *Id.* ¶¶ 96-103. However, the tips Plaintiffs reference are a voluntary option that a user may (but need not) pay when the user seeks access to their own pay. Similarly, the Lightning Speed fees are another voluntary option that an EarnIn user may select to obtain more expedited access to their pay. *See* Ex. B, EarnIn's Webpage *available at* https://www.earnin.com/products/cashout, last accessed November 14, 2024; *see also* Ex. C, EarnIn's 9/18/24 Cash Out Terms of Service, § 6 *available at* https://www.earnin.com/privacyandterms/cash-out/terms-of-service, last accessed November 14, 2024 ("You are not required to pay any fees or charges to use any of the Cash Out Services . . . ."). Plaintiffs concede throughout their Amended Complaint that payment of the tips and Lightning Speed fees were not required to obtain early access to their earned pay. In any case, Plaintiffs' failure to allege at all, much less with any particularity, that any purported misrepresentation or omission by EarnIn induced them to pay any tips or Lightning Fees is also fatal to Count II.

Finally, Plaintiffs' allegations that EarnIn is a "creditor" subject to the Truth in Lending Act ("TILA") and that EarnIn failed to disclose certain information regarding its service (Count III) are legal conclusions that are insufficient to state a claim. Am. Compl. ¶¶ 104-116.

Accordingly, Plaintiffs' Amended Complaint should be dismissed in its entirety with prejudice.

## **LEGAL STANDARD**

To properly state a claim upon which relief can be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Fed. R. Civ. P. 8(a). Rule 12(b)(6) authorizes a court to dismiss a cause of action that fails to satisfy the standard set forth in Rule 8. To avoid dismissal under Rule 12(b)(6), the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678 (internal citation omitted); *see also Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 776 (4th Cir. 2013). "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (emphasis added). "Threadbare recitals of the elements of a cause of action, supported

3

by mere conclusory statements, do not suffice." *Id.* A conclusory assertion is a conclusion without "factual enhancement" to support the conclusion. *Id.* In other words, "[t]he plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Ashcroft*, 556 U.S. at 678)).

Although the Court must accept well-pleaded facts as true, conclusory allegations are not entitled to a presumption of truth. *Ashcroft*, 556 U.S. at 678-79; *see also Baltimore-Clark v. Kinko's Inc.*, 270 F. Supp. 2d 695, 698 (D. Md. 2003). Additionally, when a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility." *Ashcroft*, 556 U.S. at 678-79 (citation and quotations omitted).

## ARGUMENT

### I. Plaintiffs' First Cause of Action Should be Dismissed Because Plaintiffs Cannot State a Viable Maryland Consumer Loan Law Claim Against EarnIn

Plaintiffs cannot plausibly state a viable claim under the MCLL against EarnIn because the statute applies only to "lenders" or other persons engaged in the business of making or collecting on "loans." *See* Md. Code Ann., Com. Law §§ 12-301; 12-302. Specifically, the MCLL provides that a "*lender*" or a person (or business) "engage[d] in the business of making *loans*" must be licensed in Maryland; a "*lender* may charge interest on a *loan* at a rate not more than" the statutory applicable cap; a "*loan* [] is void and unenforceable if" it was made by a person or *lender* who was not licensed; and a person or business may not collect or receive amounts on any unlawful *loans*. *See id.* §§ 12-302; 12-306; 12-314 (emphases added). The MCLL defines a "lender" as a "licensee or a person who makes a loan subject to" the MCLL. *Id.* § 12-301(c). In turn, a "loan" is defined as a "loan or advance of money or credit" subject to the MCLL, which are those made for "$25,000 or less" "for personal, family, or household purposes." *Id.* §§ 12-301(e); 12-303(a). Neither EarnIn nor its Cash Out services fit these definitions, and, accordingly, the MCLL does not apply to Plaintiffs' transactions with EarnIn.

Here, Plaintiffs allege that EarnIn made "loans" of $25,000 or less for "personal, family,

4

or household purposes," while unlicensed. Am. Compl. ¶¶ 60-61, 89-91. Therefore, Plaintiffs claim that their early access to their own wages constitute "void and unenforceable" loans and that they are entitled to a return of all "principal, tips, fees, and other amounts that [EarnIn] received over the past twelve years." *Id.* ¶ 95. Plaintiffs' legal conclusions, however, need not be accepted as true and, more importantly, ignore the relevant interpretations and legislative history of the MCLL.

Specifically, in 2022 the Supreme Court of Maryland held that the MCLL is intended to regulate "loan brokers" and persons "traditionally engaged in the business of consumer lending." *Nagle & Zaller, P.C. v. Delegall*, 480 Md. 274, 309, 280 A.3d 653, 673 (2022). The earliest iterations of the MCLL were intended to apply to "traditional loans or extensions of credit made by lenders who are in the business of making consumer loans." *Id.* There was no intention demonstrated in the MCLL's legislative history to expand its licensing requirements "to businesses that are not otherwise engaged in *traditional lending* practices." *Id.* (emphasis added). Accordingly, the court in *Delegall* determined that the plain language of the MCLL along with the context of the legislative history and the purpose of the statute clearly demonstrated that the "General Assembly intended the MCLL to regulate businesses engaged in consumer *lending*" and therefore it did not apply, in that case, to lawyers or law firms drafting documents tangential to loans or promissory notes and collections of the same. *Id.* (emphasis added); *see also Bittinger v. DNF Assocs., LLC*, No. TDC-22-2461, 2023 WL 4868364, at *4 (D. Md. July 31, 2023) (finding debt buyers who extended existing credit or offered payment plans for the repayment of existing debt were not lenders subject to the MCLL).

The court's reasoning in *Delegall* is equally applicable here because EarnIn offers a "Cash Out" service to its customers that is markedly different from a "loan" as defined by the MCLL or a "traditional loan" contemplated by the statute's legislative history. Specifically, EarnIn does not charge subscription fees, origination fees, or interest. Indeed, EarnIn does not charge late fees or other mandatory fees of any kind. *See* Ex. B, EarnIn's Webpage, https://www.earnin.com/products/cashout; *see also* Ex. C, EarnIn's 9/18/24 Cash Out Terms of

5

Service, § 6 ("You are not required to pay any fees or charges to use any of the Cash Out Services . . . ."). The service also is entirely non-recourse, so EarnIn has no legally enforceable right to force Plaintiffs to reimburse EarnIn for the wages to which it provides early access for its customers and there is no obligation to repay any of the earned pay to which EarnIn provides access. Ex. C, EarnIn's 9/18/24 Cash Out Terms of Service § 7 ("You do not have an obligation to repay any of the Cash Out Services, and EarnIn will have no legal or contractual claim or remedy against you based on your failure to repay any of the Cash Out Services."). And, most importantly, all the funds made available by EarnIn are solely for the customers' own earned, but not yet paid, income. *See generally id.* EarnIn only provides users access to *their own money* that they have already earned through their employment. These fundamental differences between EarnIn's service and the traditional "loan"[3] or "consumer lending" practice preclude application of the MCLL to EarnIn.

Recent legislative action further confirms that the MCLL does not apply to earned wage access products like EarnIn. Specifically, on January 10, 2024, a bill was introduced on first reading in the Maryland House of Delegates entitled "Commercial Law – Credit Regulation – Earned Wage Access and Credit Modernization" ("HB 246"). 2024 MD H.B. 246 (NS) (Jan. 10, 2024). The proposed bill specifically stated that its purpose was to "subject[] certain earned wage access products to the Maryland Consumer Loan Law and other provisions that regulate entities that provide consumer credit . . . [and] provid[e] for the licensing or registration of certain entities offering earned wage access products . . . ." *Id.* Ultimately, HB 246 did not pass and "died" in

---

[3] Indeed, the United States Department of the Treasury's "General Explanations of the Administration's Fiscal Year 2025 Revenue Proposals" further suggest that the early access to wages that companies like EarnIn provide does not constitute a "loan," including, for example, for tax purposes. *See* Ex. D, *General Explanations of the Administration's Fiscal Year 2025 Revenue Proposals*, United States Department of the Treasury, at 232-33 (Mar. 11, 2024), available at https://home.treasury.gov/system/files/131/General-Explanations-FY2025.pdf (discussing proper treatment of early wage access as "constructive receipt of [employees'] wages" despite some employers and third-party payors incorrectly treating such payments as a "loan" "arrangement"). The guidance further clarifies a proposal to amend section 7701 of the Internal Revenue Code to "provide a definition of an on-demand pay arrangement," like that offered by EarnIn to Plaintiffs, "as an arrangement that allows employees to withdraw earned wages before their regularly scheduled pay dates," not a "loan." *Id.*

6

the Maryland Senate's Finance Committee. *See https://mgaleg.maryland.gov/mgawebsite/ Legislation/Details/hb0246?ys=2024RS*. The introduction of HB 246 necessarily begs the question: if earned wage access providers, such as EarnIn, are already "lenders" making "loans" subject to the current version of the MCLL and its licensing requirements, why was a new bill introduced purporting to do just that?[4]

Plaintiffs further allege that "even if EarnIn was licensed under the [MCLL], or otherwise exempt from the licensing requirement, EarnIn's cash advance product" remains "unlawful" because the charges associated with the service exceed Maryland's "APR"[5] "cap" of 33%. Am. Compl. ¶¶ 64-69. This argument, however, similarly fails because the tips and fees associated with EarnIn's service are not "interest" in violation of the statutory cap included in the MCLL. While Plaintiffs are correct that the MCLL provides a certain maximum interest rate for "loan[s]" subject to its regulations, the allegations in the Amended Complaint do not and cannot sufficiently connect the voluntary tips and fees Plaintiffs paid to the regulated "interest" rate in the MCLL. *See* Md. Code Ann., Com. Law § 12-306.

Indeed, the term "interest" is not defined by the MCLL. *See id.* §§ 12-301; 12-306. However, interest is defined elsewhere in the same statutory title as "any compensation directly or indirectly *imposed* by a lender *for* the extension of *credit* for the use . . . of money, including any loan fee, origination fee, service and carrying charge, investigator's fee, time-price differential, and any amount payable as a discount or point otherwise payable for services." *Id.* § 12-101(e) (emphasis added). This definition of interest is substantially similar to the definition of interest

---

[4] Similarly, a bill was also introduced on first reading in the Maryland Senate on February 2, 2024 for the "purpose of requiring a certain provider of earned wage access services to register with the Commissioner of Financial Regulation," among other requirements. 2024 MD S.B. 998 (NS) (Feb. 2, 2024) ("SB 998"). This proposed registration requirement is effectively equivalent to the licensing requirement of the MCLL. *See* Md. Code Ann., Com. Law § 12-302; Md. Code Ann., Fin. Inst. §§ 1-101(g); 11-203.1(a). As with HB 246, the very introduction of SB 998 contradicts Plaintiffs' assertions that earned wage access providers, like EarnIn, are already governed by and required to be licensed under the MCLL.

[5] As a preliminary matter, an APR traditionally refers to an interest rate or another type of required charge set by a lender. An APR does not refer to a fee that a user is not even required to pay or, similarly, a tip that a user is not required to pay or, if the user decides to voluntarily tip, can unilaterally set the specific amount of the tip.

7

found in the Pennsylvania state law at issue in a case filed against EarnIn in another federal court. *See Golubiewski v. Activehours, Inc.*, No. 3:22-CV-02078, 2024 WL 4204272, at *3-4 (M.D. Pa. Sept. 16, 2024).

In *Golubiewski*, the plaintiffs' state law claim centered around the alleged regulation of EarnIn's tips and fees under the Pennsylvania Consumer Discount Company Act as "interest and any type of other or additional charge or charges that aggregate in excess of six percent, regardless of whether a charge is imposed on the amount loaned or advanced." *Id.* at *3 (internal quotations and citations omitted). The *Golubiewski* plaintiffs argued, similar to here, that EarnIn's tips and fees were also governed by the Pennsylvania Loan Interest and Protection Law's limit that "the maximum lawful rate of interest for the loan or use of money shall be six percent annum." *Id.* at *4 (internal citations and quotations omitted). The court explained that to be subject to regulation under either of these state laws, the charges must be "inextricably related to the advance" and a "necessary condition to receiving an advance or using EarnIn's services." *Id.* at *4-5. Accordingly, the court dismissed plaintiffs' claims against EarnIn because of their concession that "participation in the [Lightning Speed] service is entirely optional" and "tips are discretionary." *Id.* This Court should apply the same logic here based on Plaintiffs' concessions that EarnIn does not "impose" *any* fees as a "necessary condition" for a user to access its service. *See* Md. Code Ann., Com. Law § 12-101(e); Am. Compl. ¶¶ 26-29 (acknowledging that use of standard service is free), ¶¶ 36-40 (acknowledging tipping is entirely "optional"); ¶ 49 (admitting that at least one Plaintiff, Plaintiff Day, did not tip on at least one transaction with EarnIn); Ex. C, EarnIn's 9/18/24 Cash Out Terms of Service, § 6 ("You are not required to pay any fees or charges to use any of the Cash Out Services, however, additional fees may apply to use Lightning Speed."); Ex. E, EarnIn App Screenshot (displaying conspicuous option to choose between *free* standard service and *paid* lightning speed service).

As Maryland legislators recognize, EarnIn and similar earned wage access providers are not "lenders" or in the business of making "loans." As a result, EarnIn was not required to be licensed when it offered Plaintiffs access to their own earned wages through the EarnIn app, and

8

the voluntary tips and fees associated with that service are not "interest" in excess of state law. Accordingly, Plaintiffs have not—and as a matter of law, cannot—plausibly state a claim for relief under the MCLL and Count I of their Amended Complaint should be dismissed.

II. **Plaintiffs' Second Cause of Action Fails Because Plaintiffs Have Not Adequately Stated a Claim With Particularity Under the Maryland Consumer Protection Act**

In an attempt to invoke the MCPA, Plaintiffs allege that EarnIn engaged in "unfair, abusive, or deceptive trade practices." Am. Compl. ¶ 99. Specifically, Plaintiffs contend that EarnIn "debited the principal amount" of cash advances including "tips and lightning speed fees from Plaintiffs' and [ ] class members' bank accounts even though [EarnIn] did not have the right" to do so because the advances "were void and unenforceable." *Id.* ¶ 100. Plaintiffs further contend that they were "harmed" by EarnIn's conduct because they sustained "actual losses" in the amounts automatically debited from their bank accounts. *Id.* ¶ 101. These allegations, however, (1) fail to state a claim as a matter of law based on a plain reading of the MCPA and its requirements for a private action, and (2) are not plead with the requisite particularity.

First, EarnIn cannot be liable to Plaintiffs under the MCPA by virtue of any alleged violations of the MCLL because the latter statute applies only to lenders or other persons engaged in the business of making or collecting on loans. Here, as discussed above in Section I, EarnIn is not a lender under Maryland law and does not engage in the business of making loans, nor does it charge any interest or mandatory fees. Accordingly, Plaintiffs cannot simply sidestep this requirement by attempting to relabel the alleged violations of the MCLL as an MCPA claim. In other words, EarnIn cannot be liable under the MCPA for alleged violations of the MCLL when it could not have violated the MCLL as a matter of law.[6] *See, e.g., Adle-Watts v. Roundpoint Mortg. Servicing Corp.*, No. CV CCB-16-40, 2016 WL 3743054, at *5 (D. Md. July 13, 2006) (holding that because the plaintiff could not plead a plausible violation of the Maryland Consumer Debt

---

[6] Even assuming *arguendo* that EarnIn and its services were subject to the MCLL (they are not), the MCPA explicitly lists the statutes of which a violation constitutes "[u]nfair, abusive, or deceptive trade practices." *See* Md. Code Ann., Com. Law § 13-301(14). Notably, the MCLL is not listed. *See id.*

9

Collection Act, her MCPA claim "based on [that] alleged violation" could not survive dismissal). Similarly, as Plaintiffs acknowledge, the MCPA prohibits certain conduct in relation to the "'extension of consumer credit'" and the "'collection of consumer debt.'" *See* Am. Compl. ¶¶ 98-99 (quoting Md. Code Ann., Com. Law § 13-303). Because EarnIn does not extend "consumer credit," as it does not provide "loans," nor does it collect "consumer debt," Plaintiffs fail to state a viable claim under the MCPA and Count II should be dismissed as a matter of law. *See supra* Section I.

Plaintiffs' MCPA claim also fails for an additional, independent reason. Plaintiffs cannot plausibly state a claim under the MCPA without demonstrating: "(1) an unfair or deceptive trade practice or misrepresentation [or omission]; (2) that is relied upon; and (3) causes them actual injury." *Manago v. Cane Bay Partners VI, LLLP*, No. 20-CV-0945-LKG, 2022 WL 4017299, at *4 (D. Md. Sept. 2, 2022) (internal citation omitted); *see also Bank of Am., N.A. v. Jill P. Mitchell Living Tr.*, 822 F. Supp. 2d 505, 534 (D. Md. 2011). Plaintiffs must plead facts supporting each element of this claim with particularity. *Amenu-El v. Select Portfolio Servs.*, No. CV RDB-17-2008, 2017 WL 4404428, at *3 (D. Md. Oct. 4, 2017); *see also Smart v. Decision One Mortg. Co.*, No. CIV.A. 10-CV-00320-AW, 2011 WL 829212, at *2 (D. Md. Mar. 7, 2011) ("The prohibitions of the [MCPA] . . . sound in fraud, which means that the heightened pleading requirements of Rule 9(b) apply"). While "the requirement of 'particularity' does not require the elucidation of every detail of the alleged [claim], [it] does require more than a bare assertion that such a cause of action exists." *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007) (citation omitted); *see McKinney v. Fulton Bank*, 776 F. Supp. 2d 97, 104 (D. Md. 2010) (dismissing MCPA claim on the grounds that the claim did not meet Rule 9(b)'s heightened pleading requirements).

To support the first element, Plaintiffs vaguely claim that EarnIn collected the principal amounts, tips, and lightning speed fees from their bank accounts without the right to do so. *See* Am. Compl. ¶ 100. However, Plaintiffs' conclusory allegations of law fail to properly plead with particularity *any* specific misrepresentation or omission under the MCPA. *See id.* ¶¶ 97-103; *Gibson v. Nationstar Mortg., LLC*, No. GJH-14-03913, 2015 WL 302889, at *3-4 (D. Md. Jan. 21,

2015) (dismissing MCPA claim where the plaintiff's conclusory allegations failed to meet the heightened pleading standard including the "requisite 'who, what, where, when, why, and how'" related to the alleged misrepresentation or omission); *see also Manago*, 2022 WL 4017299, at *7 (dismissing MCPA claim because, *inter alia*, the Amended Complaint failed to sufficiently identify any specific unfair or deceptive trade practices on the part of the Defendants). Nor could they when EarnIn customers can decide for themselves whether to use the no-cost option for transmission of their funds via the ACH network or to pay a fee to expedite the transmission of their funds and receive quicker access (i.e., the Lightning Speed fee). *See* Ex. B, EarnIn's Webpage, https://www.earnin.com/products/cashout; Ex. E, EarnIn App Screenshot (displaying conspicuous option to choose between *free* standard service and *paid* lightning speed service); *see also* Ex. C, EarnIn's 9/18/24 Cash Out Terms of Service, § 6 ("You are not required to pay any fees or charges to use any of the Cash Out Services, however, additional fees may apply to use Lightning Speed."). Indeed, Plaintiffs' own allegations emphasize that the decision whether to pay the Lightning Speed fee rests only with the user. *See* Am. Compl. ¶¶ 25-29.

Similarly, although customers may express appreciation for the service by tipping EarnIn, the decision to do so is completely voluntary and up to the discretion of the customer on each transaction. *See* Ex. C, EarnIn's 9/18/24 Cash Out Terms of Service, § 6 ("Payment of tip is completely optional."). In fact, customers who use EarnIn and do not tip receive the identical services as those who do tip. *See id.* ("Payment or non-payment of a tip will not affect your eligibility to participate in the Cash Out Services and will not affect the size of any Cash Out you receive."). Notably, Plaintiffs *did not* plead that they tipped or paid the Lightning Speed fee on all of their transactions with EarnIn. *See generally* Am. Compl. Nor could they. Plaintiffs' own allegations demonstrate that Plaintiff Day did not tip on, at the very least, one EarnIn transaction. *See* Am. Compl. ¶ 49. Further, the screenshots of EarnIn's mobile app included in Plaintiffs' Amended Complaint explicitly provide that any tip is "optional." *See id.* ¶ 36 ("Your optional tips help support EarnIn."), ¶ 39 ("Leaving an optional tip keeps us running . . . ."). Plaintiffs' allegations are contradictory and do not suffice regarding the first element of their MCPA claim.

Moreover, Plaintiffs cannot sufficiently plead the second element of reliance without claiming that the alleged misrepresentation or omission "substantially induce[d] [their] choice," that they "would not have made the choice in question," or that they would have acted differently had the alleged misrepresentation or omission not occurred. *Mitchell Living Tr.*, 822 F. Supp. 2d at 532, 535; *Castle v. Capital One, N.A.*, No. CIV.A. WMN-13-1830, 2014 WL 176790, at *7 (D. Md. Jan. 15, 2014), *aff'd sub nom. Castle v. Capital One, Nat'l Ass'n*, 593 F. App'x 223 (4th Cir. 2015); *see also Manago*, 2022 WL 4017299, at *7-8. Here, while Plaintiffs allege that they used EarnIn and paid "EarnIn's charges" they do not allege at all—let alone with particularity—that any purported misrepresentation or omission by EarnIn induced them to do so or that any change in EarnIn's conduct would have altered their choices. *See* Am. Compl. ¶¶ 22, 48. Conclusory allegations that harm resulted from any purported conduct by EarnIn, like those in Plaintiffs' Amended Complaint, are not enough to establish reliance under the MCPA. *See Gibson*, 2015 WL 302889, at *4 & n.2; *Sindermann v. Wells Fargo Bank, N.A.*, No. CIV. CCB-14-871, 2014 WL 7369812, at *5 (D. Md. Dec. 23, 2014).

Finally, Plaintiffs' singular, vague allegation that they were "harmed" by a product that included free options for them to access their own earned wages prior to receipt of their paycheck also fails to satisfy the Rule 9 standard. *See* Am. Compl. ¶ 101. Plaintiffs are seeking a windfall, not a redress for harm, where their request essentially is to be doubly paid via the early access to their wages and a second payment of such amounts as "damages." As such, they have failed to plead with particularity the third element of an MCPA claim, "actual injury." *See Manago*, 2022 WL 4017299, at *4. Accordingly, Plaintiffs' claims in Count II under the MCPA must be dismissed.

**III.    Plaintiffs' Third Cause of Action Should be Dismissed Because EarnIn Does Not Extend Credit, Is Not a Creditor, and, Therefore, TILA Does Not Apply**

The Amended Complaint's third cause of action asserts a violation of the Truth in Lending Act's ("TILA") disclosure requirements. Specifically, Plaintiffs incorrectly assert that TILA required, and EarnIn failed to disclose, certain finance terms to consumers, including the "amount

financed"; "finance charge"; "annual percentage rate"; and "total of payments." *See* Am. Compl. ¶¶ 105-110 (citing 15 U.S.C. §§ 1638(a)(2)-(5)). Put simply, Plaintiffs' third cause of action misunderstands TILA and the meaning of consumer credit transactions, pursuant to 15 U.S.C. § 1602.

TILA, which governs "consumer credit transactions," "was enacted to promote the informed use of credit by consumers by requiring meaningful disclosure of credit terms." *See Begala v. PNC Bank, Nat'l Ass'n*, 163 F.3d 948, 950 (6th Cir. 1998), *as amended* (Mar. 26, 1999). "TILA mandates that *creditors* make specific disclosures before extending credit to consumers" including, "among other things, the amount financed, the finance charge, the annual percentage rate, and the total sale price." *Tripp v. Charlie Falk's Auto Wholesale Inc.*, 290 F. App'x 622, 626 (4th Cir. 2008) (citing 15 U.S.C. § 1638(a)-(b)) (emphasis added).

Relevant here,

> The term "creditor" refers only to a person who **both** (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. §§ 1602(g) (emphasis added).

Applying this definition to the instant case, Plaintiffs have not—and cannot—plead facts sufficient to establish that EarnIn is a "creditor" within the meaning of TILA. Indeed, EarnIn is decidedly *not* a creditor because it does not extend "credit" under TILA. Further, even if EarnIn were considered to extend credit, (i) its access to earned pay does not involve anything "payable by agreement in more than four installments"; and (ii) there is no requirement to pay a "finance charge" on the service EarnIn provides to allow customers to access their earned pay. *Id.*

Regulation Z, which implements TILA, defines "credit" as "the right to defer payment of debt or to incur debt and defer its payment." 12 C.F.R. § 1026.2(14). Here, the access to their own pay that EarnIn provides to its customers does not enable customers to defer or incur debt.

Indeed, no "debt" is created through the use of EarnIn's service because its customers, like Plaintiffs, have no obligation to pay anything—not interest or mandatory fees, and not even repayment of the wages accessed. This determination is consistent with holdings in other courts, which have held that businesses with non-recourse structures similar to EarnIn are not required to make any disclosures under TILA. *See Harmon v. Fifth Third Bancorp.*, No. 18-CV-00402, 2020 WL 2512820, at *9 (S.D. Ohio May 15, 2020), *aff'd*, 858 F. App'x 842 (6th Cir. 2021). As held in *Harmon*, where a consumer "has no liability . . . for losses associated with [an advance]," it does not constitute "credit" within the meaning of TILA. *Id.*

Even assuming *arguendo* that the access EarnIn provides customers to their earned pay could be considered "credit" within the purview of TILA, EarnIn still cannot reasonably be considered a "creditor" under TILA. First, reimbursement to EarnIn for access to earned pay occurs—if at all—in a single installment and not "in more than four installments." Moreover, as discussed *supra*, the services EarnIn provides are non-recourse and as such, the customer has no enforceable legal or contractual obligation regarding the earned pay they access through EarnIn. In other words, there is never an agreement between EarnIn and customers like Plaintiffs to pay in installments, let alone more than four installments.

Second, the Amended Complaint fails to plead facts sufficient to demonstrate the existence of a requirement to pay a "finance charge," because no such requirement exists for users of EarnIn, and no finance charge is ever imposed.

TILA defines "finance charge" as:

> [T]he sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit. The finance charge does not include charges of a type payable in a comparable cash transaction.

15 U.S.C. § 1605(a). Critically, the "phrase 'incident to' as it relates to the extension of credit requires a necessary connection between the credit and the charge." *Golubiewski*, 2024 WL 4204272, at *6 (citing *Household Credit Servs., Inc. v. Pfennig*, 541 U.S. 232, 239-41 (2004)).

14

Neither the discretionary tip nor the optional Lightning Speed fee referenced by Plaintiffs constitutes a "finance charge" within the meaning of TILA because neither is imposed "as an incident to the extension of credit" to establish such a "necessary connection." *Id.* Put simply, voluntary charges entirely within the customer's control are not "incident to the extension of credit." *See, e.g.*, *Veale v. Citibank, F.S.B.*, 85 F.3d 577, 579 (11th Cir. 1996) ("Since the Veales could have chosen not to pay the Federal Express fee and the bank did not require it, then the fee was not imposed as an incident to the extension of credit and need not be included in the Finance Charge . . . . [T]he charge here was not incidental to the extension of credit.").

Plaintiffs also cite to a proposed interpretive rule by the Consumer Financial Protection Bureau as additional support for their claims that TILA applies to companies like EarnIn and that tips and fees like those referenced in the Amended Complaint are finance charges. *See* Am. Compl. ¶ 114 & Ex. D to Am. Compl. Interpretive rules, however, simply "advise the public" and lack "the force and effect of law." *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 97 (2015). The notice cited by Plaintiffs is *not* an adopted interpreted rule—it is merely a "proposed" one. *See* Am. Compl. ¶ 114 & Ex. D to Am. Compl. As such, the proposed interpretive rule is not at all binding on this Court.[7]

Critically, Plaintiffs' own Amended Complaint concedes that the tips and Lightning Speed fees referenced are not a mandatory requirement of Plaintiffs' use of EarnIn. *See* Am. Compl. ¶¶ 26-29 (acknowledging that EarnIn offers both a standard advance at no cost and an expedited advance at a nominal fee); ¶ 40 (acknowledging that a user of EarnIn has the option to change the tip to zero). Indeed, in the *Golubiewski* case discussed *supra*, another federal court faced with substantially similar allegations held that the optional tips and fees paid by users of EarnIn "are

---

[7] This same scrutiny should be applied to Plaintiffs' citation to a letter from the Massachusetts Attorney General written to the CFPB in support of the proposed interpretive rule. *See* Am. Compl. ¶ 115 & Ex. E to Am. Compl. Legal conclusions and interpretations of state attorneys general do not bear on this Court's analysis of a *federal* law and whether or not Plaintiff have adequately pleaded *factual* allegations sufficient to support their claims.

15

not finance charges under TILA" because they are "not a necessary condition to credit."[8] *Golubiewski*, 2024 WL 4204272, at *6 (dismissing TILA claims for failure to state a claim) (citing *Pfennig*, 541 U.S. at 239-41).

Moreover, TILA's finance charge provision is part of "a disclosure statute, not a fair pricing law." *Poulin v. Balise Auto Sales, Inc.*, 647 F.3d 36, 38 (2d Cir. 2011); *see also Willis v. Bank of Am. Corp.*, No. CIV.A. ELH-13-02615, 2014 WL 3829520, at *17 (D. Md. Aug. 1, 2014) ("TILA is only a disclosure statute and does not substantively regulate consumer credit but rather requires disclosure of certain terms and conditions of credit before consummation of a consumer credit transaction.") (internal quotations and citation omitted). Plaintiffs do not allege—nor could they—that the tip amount or Lightning Speed fee are not disclosed to EarnIn's customers. Indeed, Plaintiffs allege that customers using EarnIn are taken to a screen where they can modify the tip amount, including to zero. *See* Am. Compl. ¶¶ 39-40. Further, EarnIn's customers have the ability, and are adequately informed of such ability, to change the tip amount up to thirty days after reimbursement of the Cash Out, including by subsequently reducing it to zero. *See* Ex. C, EarnIn's 9/18/24 Cash Out Terms of Service, § 6 ("EarnIn will refund a tip if you request a refund within 30 days of repayment of a Cash Out."). Similarly, customers like Plaintiffs must affirmatively choose the expedited transmission option over standard transmission on an in-app screen that discloses up front that standard service is at no cost and specifies the cost of the Lightning Speed fee—further evidence that the Lightning Speed fee is also conspicuously disclosed. *See* Am. Compl. ¶¶ 25-29; Ex. E, EarnIn App Screenshot. Accordingly, Plaintiffs' TILA cause of action

---

[8] The legal arguments from caselaw in Plaintiffs' Amended Complaint hold no weight in this Court's 12(b)(6) analysis. *See* Am. Compl. ¶ 113 & n.6. Regardless, the same caselaw Plaintiffs cite to liken EarnIn's non-recourse service to "debt" and analogize voluntary tips and lightning speed fees to "finance charges" governed by TILA was briefed in opposition to a similar motion to dismiss in *Golubiewski* and the court dismissed the plaintiffs' TILA claims for failure to state a claim. *See* ECF No. 27, *Golubiewski v. Activehours, Inc.*, No. 3:22-cv-02078-MEM (M.D. Pa. Oct. 10, 2023), at 9-12 (arguing EarnIn's advances constitute credit under TILA and citing *Oasis Legal Fin. Grp., LLC v. Coffman*, 361 P.3d 400 (Colo. 2015); *Wiley v. Earl's Pawn & Jewelry, Inc.*, 950 F. Supp. 1108 (S.D. Ala. 1997); and *Clark v. Rent-It Corp.*, 685 F.2d 245 (8th Cir. 1982)); *see also Golubiewski*, 2024 WL 4204272, at *6-7 (dismissing plaintiffs' TILA claims against EarnIn for failure to state a claim).

also fails as a matter of law.

## CONCLUSION

Based on the foregoing, Defendant requests that this Court enter an Order granting Defendant's Motion to Dismiss Plaintiffs' Amended Complaint with prejudice.

Dated: November 14, 2024

Respectfully submitted,

*/s/ Jason C. Rose*
Jason C. Rose (Bar No. 27684)
Raquel L. Flynn (Bar No. 30591)
VENABLE LLP
750 E. Pratt Street, Ste. 900
Baltimore, Maryland 21202
Telephone: (410) 244-7553
Facsimile: (410) 244-7742
JCRose@Venable.com
RLFlynn@Venable.com

*Attorneys for Defendant Activehours, Inc.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 14, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record that are registered with the Court's CM/ECF system.

                                            *s/ Jason C. Rose*
                                            Jason C. Rose