## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**ALISA JOHNSON,** *et al.,*

      *Plaintiffs*,

    **v.**

**ACTIVEHOURS, INC. d/b/a EARNIN,**

      *Defendant*.

Civil No.: 1:24-cv-02283-JRR

## <u>MEMORANDUM OPINION</u>

Pending before the court is Defendant Activehours, Inc. d/b/a EarnIn's Motion to Dismiss. (ECF No. 16, the "Motion.") The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons set forth below, the Motion will be granted in part and denied in part.

## I.    <u>BACKGROUND</u>[1]

### A. EarnIn's Business Model

Plaintiffs' allegations concern Defendant's cash advance mobile application (or "app"), EarnIn.[2] Defendant advertises EarnIn as a way for users to access their earned wages in advance of their payday. (ECF No. 12 ¶ 16.) The app provides cash advances of up to $100 at a time, and up to $750 per pay period. *Id*. ¶ 15. EarnIn requires users to "(i) have an employer that pays them regularly; (ii) link the bank account to which paychecks are deposited to [the app]; and (iii) authorize EarnIn to automatically debit the linked accounts on payday in an amount that is equal to the advance a user receives and the charges a user agrees to pay." *Id*. ¶ 50. "[B]efore issuing

---

[1] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the First Amended Class Action Complaint. (ECF No. 12.) *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

[2] As set forth above, Defendant does business as EarnIn; this is also the name of Defendant's app about which Plaintiff complains.

cash advances, EarnIn performs a proprietary credit check on a user's linked bank account to ensure that the account will have sufficient funds to repay EarnIn's automatic account debits on payday." *Id.* ¶ 52.

EarnIn advertises that all users can instantly access wage advances; however, EarnIn asks all users to pay "lightning speed fees" ranging from $1.99 to $3.99 depending on the amount of the requested advance. *Id.* ¶¶ 16, 24. If users do not elect to pay the lightning speed fee, they will not receive access to the advance cash for "a few days." *Id.* ¶¶ 28–29. When a user requests an advance, EarnIn also prompts the user to pay a "tip" for EarnIn's services. (ECF No. 12 ¶ 36.) EarnIn represents these tips as necessary to "support the service" and to "keep EarnIn running for the rest of the community." *Id.* ¶ 42. EarnIn presents users with four non-zero tip options and users must navigate through multiple prompts to decline to pay a tip. *Id.* ¶¶ 36–40. A majority of EarnIn's users in Maryland pay EarnIn tip charges. *Id.* ¶ 45.

## B. Maryland's Regulatory Framework

Plaintiffs allege Defendant's EarnIn model and practices violate the Maryland Consumer Loan Law ("MCLL") (MD. CODE ANN., COM. LAW § 12-301, *et seq.*); the Maryland Consumer Protection Act ("MCPA") (MD. CODE ANN., COM. LAW § 13-101, *et seq.*); and the Truth in Lending Act ("TILA") (15 U.S.C. § 1601, *et seq.*).

MCLL prohibits unlicensed persons from "engag[ing] in the business of making loans." MD. CODE ANN., COM. LAW § 12-302. For purposes of the statute, loan "means any loan or advance of money or credit subject to [MCLL], regardless of whether the loan or advance of money or credit is or purports to be made under [MCLL]." *Id.* § 12-301. Loans subject to MCLL are those of $25,000 or less made for personal, family, or household purposes. *Id.* § 12-303(a)(1). For loans subject to MCLL, the law additionally imposes limits on the "rate of interest, charge,

discount, or other consideration" that may be contracted as part of the loan. *Id.* § 12-306(a). Loans are void and unenforceable if made by an unlicensed lender or if made to exceed MCLL's interest limits. *Id.* § 12-314(b)(1)(i). Before May 25, 2025, MCLL did not explicitly address earned wage access products. During the pendency of this action, however, the Maryland Legislature passed House Bill 1294.

House Bill 1294 amends MCLL "for the purpose of subjecting certain earned wage access products to the [MCLL]." H.B. 1294, 2025 Md. Laws ch. 847. The amendment, which becomes effective October 1, 2025, adds § 12-319 to MCLL. Section 12-319 provides: "notwithstanding any other provision of this title, a loan shall be subject to this subtitle, whether or not elected, if the loan is consumer–directed earned wage access under subtitle 15 of this title." *Id.* § 12-319. Pertinent to this action, subtitle 15 defines earned wage access and imposes disclosure and other requirements for tips and fees charged by earned wage access providers. *Id.* §§ 12-1501(E)–(I); 12-1503.

### C. Procedural Posture

Plaintiffs, individual EarnIn users residing in Maryland and Delaware, received advances and paid both lightning speed fees and tips. (ECF No. 12 ¶ 49.) On August 7, 2024, Plaintiffs initiated this action on behalf of themselves and a putative class of similarly situated individuals. (ECF No. 1.) After Defendant moved to dismiss the initial complaint (ECF No. 6), Plaintiffs filed the operative First Amended Class Action Complaint (ECF No. 12; the "Amended Complaint"). In the Amended Complaint, Plaintiffs seek to certify a class of "[a]ll persons that obtained an advance or loan from Defendant, and resided in Maryland when they signed up for the EarnIn app, or resided in Maryland when they obtained an advance or loan from Defendant." (*Id.* ¶ 76.) As set forth above, on behalf of themselves and the putative class, Plaintiffs allege Defendant's EarnIn

violates MCLL; MCPA; and TILA.  Defendant moves to dismiss all counts (ECF No. 16); and Plaintiffs oppose the Motion (ECF No. 19).  On June 24, 2025, in view of the passage of Maryland House Bill 1294 described above, the court ordered the parties to address the effect, if any, of H.B. 1294 on their arguments related to the Motion.  (ECF No. 24.)  The parties timely submitted the requested supplemental briefing, which the court considers in its analysis of the Motion.

## II.    <u>LEGAL STANDARD</u>

A motion asserted under Federal Rule of Civil Procedure 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  Therefore, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief."  *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient."  *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp.

3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

## III.  ANALYSIS

### A.  Count I – Maryland Consumer Loan Law

At Count I, Plaintiffs allege Defendant violates MCLL by making loans without a license and with interest rates that exceed MCLL's maximum limitation. Defendant, in turn, submits Plaintiffs' MCLL claim fails because Defendant is not "engaged in the business of making loans" as defined by MCLL and, thus, is not required to be licensed under MCLL. Additionally, Defendant avers lightning speed fees and tip charges are not "interest" as defined by MCLL.

As set forth above, MCLL prohibits unlicensed persons from "engag[ing] in the business of making loans" and defines a loan as "any loan or advance of money or credit subject to [MCLL], regardless of whether the loan or advance of money or credit is or purports to be made under [MCLL]." MD. CODE ANN., COM. LAW §§ 12-301, 12-302. Loans subject to MCLL are those of $25,000 or less made for personal, family, or household purposes, *id*. § 12-303(a)(1); and MCLL imposes limits on the "rate of interest, charge, discount, or other [loan] consideration." *Id.* § 12-306(a). A loan is void and unenforceable if made by an unlicensed lender or if made in excess of MCLL interest/charge ceiling. *Id*. § 12-314(b)(1)(i).

#### 1.  *MCLL's Application to EarnIn*

To succeed on its Motion, Defendant must first show Plaintiffs have not pled facts that, accepted as true and construed in Plaintiffs' favor, plausibly suggest Earnin is "engage[d] in the

business of making loans." MD. CODE ANN., COM. LAW § 12-302.  Defendant has not made this showing; at this stage, Plaintiffs sufficiently allege that EarnIn is in the business of making loans subject to MCLL without the requisite license.  Neither the cases Defendant relies upon nor the plain language of the statute persuades this court that Plaintiffs fail to plausibly allege EarnIn is in the business of making loans within the framework captured by MCLL.

Defendant first cites a Supreme Court of Maryland case, *Nagle & Zaller, P.C. v. Delegall*, to argue that the plain language and legislative history of MCLL demonstrate its licensing requirements apply only to those engaged in "traditional lending practices."  480 Md. 274, 309 (2022).  Relying on *Delegall*, Defendant submits that EarnIn does not provide a "traditional loan," because it does not charge subscription fees, origination fees, interest, late fees, or other mandatory fees of any kind.  (ECF No. 16-1 at p. 7.)  Additionally, Defendant argues EarnIn does not provide loans because it "has no legally enforceable right to force Plaintiffs to reimburse EarnIn for the wages to which it provides early access for its customers and there is no obligation to repay any of the earned pay to which EarnIn provides access."  *Id*. at p. 8.

In *Delegall*, the Supreme Court of Maryland determined that the plaintiffs, lawyers in the business of providing legal services to clients, were not in the business of making loans as contemplated by MCLL.  480 Md. at 674.  "There is nothing to indicate that [the legislature] intended to expand the licensing requirements of MCLL to businesses that are not otherwise engaged in traditional consumer lending practices."  *Id*.  The court in *Delegall* did not define "traditional consumer lending practices" in a fashion helpful to determine whether EarnIn qualifies as a lender under MCLL.  Said differently, the court did not hold that the lawyer plaintiffs before it were not traditional lenders because they did not have a legally enforceable right to force reimbursement or because they did not charge certain fees.  *See id*. (finding that the General

6

Assembly did not intend MCLL "to apply to all lawyers or law firms that draft loan documents or engage in collection activity on behalf of clients"). *Delegall* does not shed light on the question at issue in this case and does not support a finding that EarnIn is not engaged in traditional consumer lending practices as a matter of law, or as otherwise covered by MCLL.

Turning to the statute's plain language, MCLL defines "loan" to include an "advance of money." MD. CODE ANN., COM. LAW § 12-301. The legal dictionary definition of an "advance" is "the furnishing of money or goods before any consideration is received in return." (BLACK'S LAW DICTIONARY 12th ed. 2024). Defendant appears to import the requirement of repayment into MCLL's definition of loan or into the definition of advance. *See* ECF No. 22 at p. 4 ("Plaintiffs acknowledge that there is *no obligation* to repay any of the funds users access through EarnIn like there would be if EarnIn's Cash Out Service was, in fact, a loan."). The court, however, is not persuaded at this time that "loan," as defined by MCLL, or the dictionary/ordinary meaning of "advance," necessarily incorporates a condition or term of repayment such that the lack of express legal recourse to recoup loaned (or advanced) funds is disqualifying. In other words, at the 12(b)(6) stage, it is not fatal to Plaintiffs' claim that EarnIn users may not be, or are not, required to repay the wage advance per terms set forth in the app, and that users may not repay it in every instance. *See* ECF No. 12 ¶ 55 ("the requirements that EarnIn imposes to obtain an advance has the practical effect of ensuring that EarnIn obtains repayment on virtually every advance it issues.") Importantly, MCLL expressly applies to transactions that are, or purport to be, "nonrecourse." MD. CODE ANN. § 12-303(a)(2)(iv).

Plaintiffs allege that EarnIn expects to be repaid and communicates this expectation to users; and that EarnIn ensures, or at the very least enhances the likelihood of, repayment by: (i) requiring that a user have an employer that pays the user regularly, (ii) granting EarnIn access to

the bank account where the user's paycheck is deposited, and (iii) enabling/authorizing automatic debiting of the user's bank account.  (ECF No. 12 ¶ 50.)  Additionally, Plaintiffs plead that users cannot receive advances before they have linked their bank account and allowed automatic debiting, and that EarnIn performs a credit check on the linked bank account to "ensure that the account will have sufficient funds to repay EarnIn's automatic account debits on pay day."  *Id*. ¶¶ 51, 52.

In a recent case involving similar allegations against Defendant, the Northern District of California found that EarnIn's wage advances qualified as advances under the Georgia Payday Loan Act:

> [P]laintiffs allege that both EarnIn and its users understand that users are expected to repay any advances, that EarnIn implements several requirements to ensure that repayment will occur in nearly all circumstances, and that EarnIn's disclaimer of any *legal* repayment obligation is therefore a sham, illusory, or at the very least lacking in any real-world significance.
>
> Under these circumstances, plaintiffs adequately plead that the money provided by EarnIn to its users is "advanced to be paid a later date"—namely, the date on which users' paychecks are deposited into their bank accounts by their employers.

*Orubo v. Activehours, Inc.*, --- F. Supp. 3d ---, 2025 WL 1257695, at *4 (N.D. Cal., Apr. 30, 2025).[3]

Defendant relies on a Middle District of Pennsylvania case, *Golubiewski v. Activehours, Inc.*, where the court granted Defendant's motion to dismiss claims brought under Pennsylvania laws and TILA.  The Pennsylvania laws in question, however, differ materially from MCLL.  In *Golubiewski*, the court explained that, to be subject to the two Pennsylvania laws at issue, interest

---

[3] "The Georgia Payday Loan Act prohibits the making of loans of $3,000.00 or less unless the lender is a bank or otherwise licensed to do so under a Georgia licensing statute.  The statute does not expressly define loan but implicitly gives meaning to that term by its provision that it 'shall apply with respect to all transactions in which funds are advanced to be repaid at a later date."  *Orubo*, 2025 WL 1257695, at *3 (citations omitted).

and charges had to be necessary conditions of the advance. *Golubiewski v. Activehours, Inc.*, No. 3:22-CV-02078, 2024 WL 4204272, at *4 (M.D. Pa. Sept. 16, 2024). In *Golubiewski*, the court interpreted different state laws than those at issue here and sought to answer a different, narrower question—whether EarnIn's tips and fees qualified as interest within the meaning of the Pennsylvania laws at issue there. *Id*. at *3.

This case is more akin to *Orubo*. Here, as in *Orubo*, the court is persuaded that Plaintiffs plausibly allege that EarnIn makes loans or advances as defined by the relevant state statutes. Plaintiffs allege that EarnIn users' wages are advanced with the expectation of repayment. (ECF No. 12 ¶¶ 50–55.) Defendant fails to cite persuasive or controlling authority, or otherwise convincingly argue, that Plaintiffs fail to (or cannot) state a plausible MCLL claim because (or if) repayment does not occur in every advance transaction, or because EarnIn's terms do not set forth legal recourse in the event of non-repayment. Plaintiffs have adequately pled that EarnIn furnishes money to users because it expects to recoup advanced monies from the linked bank accounts following users' receipt of their paychecks—paychecks that EarnIn takes steps to ensure will be paid. *Id*.

MCLL's language, purpose, and scope confirm that the term "advance" as used therein does not carry a strict repayment requirement that would allow evasion by the means Defendant relies upon here: by disclaiming an express repayment requirement while constructing conditions that nearly, or practically, ensure repayment. MCLL explicitly provides that it applies "regardless of (i) Whether the transaction is or purports to be made under this subtitle; … (iv) Whether the transaction is or purports to be nonrecourse or contingent; and (v) Whether the transaction purports to be the purchase of wages, pensions, governmental benefits, or other similar future payment streams." MD. CODE ANN., COM. LAW § 12-303(a)(2). And the court is mindful that in enforcing

anti-usury laws, including MCLL, "[o]ver a century of Maryland precedent establishes that courts must look[] beneath the form of the transaction at issue, into its 'true nature,' in determining whether it was a 'loan.'" *Matter of Cash-N-Go, Inc.*, 256 Md. App. 182, 208 (2022) (quoting *B&S Mktg. Enters., LLC v. Consumer Prot. Div.*, 153 Md. App. 130, 154 (2003)(internal quotations omitted)). Accordingly, at this stage of the case, Defendant's insistence that the non-recourse nature of its wage advances and the fact that it does not explicitly require repayment does not persuade this court that MCLL does not, as a matter of law, apply to EarnIn.

### 2. *House Bill 2194*

For the reasons stated above, the court is persuaded that at this juncture, Defendant has not met its burden to show that Plaintiffs' allegations, accepted as true, do not plausibly show violation of MCLL. The recent enactment of House Bill 2194 does not alter this determination. As explained above, in May 2025, the Maryland legislature enacted House Bill 2194 to define earned wage access products and to specify that MCLL's licensure and interest limits apply to same. H.B. 1294, 2025 Md. Laws ch. 847.

In determining the meaning of Maryland laws, "a subsequent legislative amendment of a statute is not controlling as to the meaning of the prior law" but it may be "helpful to determine legislative intent." *Chesek v. Jones*, 406 Md. 446, 462 (2008). Defendant argues "[i]f EarnIn's product already had been subject to MCLL regulations at the time that Plaintiffs used the service and filed their Complaint, it would not have been necessary for the Maryland legislature to create a new law with a stated purpose of doing just that." (ECF No. 26 at p. 3.)

Extraneous material, or material beyond a statute's plain language, may be considered for "confirmatory purposes" but not "to seek contradiction of the plain meaning of the statute." *Duffy v. CBS Corp.*, 458 Md. 206, 229 (2018). House Bill 2194, including its statement of purpose, is

such extraneous material; it is not controlling as to the meaning of MCLL. Rather, the court considers it for confirmatory purposes only. Notably, in *Travelocity.com LP v. Comptroller of Maryland*, cited extensively by Defendant, the Supreme Court of Maryland looked to the subsequent amendment to "bolster" its analysis – not, as Defendant asks the court to do here, to contradict the plain language of the statute. 473 Md. 319, 343 (2021).

It is not uncommon for legislatures to update statutes to accommodate developing technologies; this does not mean, as a rule, that emerging technologies are unregulated prior to their explicit inclusion in the statute. This principle holds true for MCLL. The law contemplates that lenders may adapt their practices to evade regulation, and thus specifically applies "regardless of (i) whether the transaction is or purports to be made under this subtitle; (ii)whether the transaction is or purports to be an installment loan; . . . (iii) whether the transaction is or purports to be nonrecourse or contingent." MD. CODE ANN., COM. LAW § 12-303(a)(2). Accordingly, House Bill 2194 does not change the court's determination that Defendant has not carried its burden on the Motion.

### 3. *MCLL's Application to EarnIn's Lightning Fees and Tips*

Defendant next argues that even if its earned wage advances are loans under MCLL, its voluntary tips and fees are not interest and thus not subject to MCLL's statutory maximums for interest rates. The parties agree that while MCLL does not define the term "interest," it is defined in the Credit Regulations Title of Maryland's Commercial Law Article as follows: "any compensation directly or indirectly imposed by a lender for the extension of credit for the use or forbearance of money, including any loan fee, origination fee, service and carrying charge, investigator's fee, time-price differential, and any amount payable as a discount or point or otherwise payable for services." MD. CODE ANN., COM. LAW § 12-101(e).

11

Defendant argues that this definition is "substantially similar" to that of the Pennsylvania statutes at issue in *Golubiewski*, and thus, this court should follow suit by granting the Motion. (ECF No. 16-1 at p. 10.)  The *Golubiewski* court analyzed claims brought under Pennsylvania's Loan Interest Protection Law, 41 Pa. Stat. §§ 101-605, and Pennsylvania's Consumer Discount Company Act, 7 Pa. Stat. §§ 6201-6221; and, in so doing, the court applied Pennsylvania common law to deduce their respective meanings and application to the claims brought there.  *Golubiewski v. Activehours, Inc.*, No. 3:22-CV-02078, 2024 WL 4204272, at *3 (M.D. Pa. Sept. 16, 2024).   In consideration of District of Pennsylvania precedent and state common law, the court concluded that interest must be "inextricably related" to the advance.  *Id.* at *4.  Defendant here cites no authority from this court or Maryland state courts that to qualify as interest under MCLL, charges or fees must be "inextricably related" to, or "a necessary condition" of, the advance.

The court is unpersuaded by the Motion on this issue at this stage of the case.  Plaintiffs allege facts, accepted as true and receiving the benefit of all reasonably drawn inferences, that plausibly claim that EarnIn charged interest in excess of the limitations imposed by MCLL.  Said differently, at this juncture, Plaintiffs plausibly allege that the lightning speed fees and tips are loan fees or service charges directly or indirectly imposed by EarnIn.  Defendant's Motion will be denied as to Count I.

**B.  Count II – Maryland Consumer Protection Act**

In Count II, Plaintiffs allege Defendant violated MCPA by "debit[ing] the principal amount of its cash advances, with its tips and lightning speed fees, from Plaintiffs' and the [putative] class members' bank accounts" when it did not have the right to do so, because  its advances were "void and unenforceable" as violative of MCLL.  (ECF No. 12 ¶ 100.)  Defendant urges that it cannot be liable under MCPA for alleged violations of MCLL when, as Defendant contends, MCLL does

not apply to Defendant.  Further, Defendant submits that MCPA does not otherwise apply to it and Plaintiffs have not pled a violation of the Act with requisite particularity.

MCPA prohibits commercial entities from engaging in any "unfair or deceptive trade practice" in "[t]he extension of consumer credit." MD. CODE ANN., COM. LAW § 13-303.  MCPA defines "unfair or deceptive" trade practices to include "false . . . or misleading oral or written statement[s] . . . or other representations . . . [that have] the capacity, tendency, or effect of deceiving or misleading consumers." *Id.* § 13-301.  Consumers "may bring an action to recover for injury or loss sustained . . . as the result of" such a misrepresentation.  *Id.* § 13-408(a).  Importantly, "[c]onsumers must prove that they relied on the misrepresentation in question to prevail on a damages action under the MCPA."  *Bank of Am., N.A. v. Jill P. Mitchell Living Tr.*, 822 F. Supp. 2d 505, 532 (D. Md. 2011) (quoting *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 752 (2000)).

Defendant argues: "[b]ecause EarnIn does not extend 'consumer credit,' as it does not provide 'loans' [or] collect 'consumer debt,' Plaintiffs fail to state a viable claim under the MCPA and Count II should be dismissed as a matter of law."  (ECF No. 16-1 at p. 12.)  As explained above, the court disagrees that Plaintiffs do not plausibly allege that EarnIn provides loans or extends consumer credit; accordingly, the court will not dismiss Count II on these grounds.[4]

Defendant is correct, however, that Plaintiffs do not allege that they relied on a specific misrepresentation made by EarnIn.  Plaintiffs concede as much, but counter that they "are not required to allege reliance, as they do not contend that they were induced to act based upon a

---

[4] Defendant additionally avers that violation of MCLL is not included in MCPA's list of unfair and deceptive trade practices.  (ECF No. 16-1 at p. 11 n.6.)  This list, however, is "nonexclusive." *Golt v. Phillips*, 308 Md. 1, 8 (1986); *see also Wash. Home Remodelers, Inc. v. State*, 426 Md. 613, 628 (2012) (noting "the fact that discrete activities may not be enumerated in [§] 13-301 does not preclude investigation into whether that activity, or any adverse effects . . ., constitute a violation of the MCPA.").

misrepresentation."  (ECF No. 19 at p. 23.)  Plaintiffs are incorrect.  "The mere existence of a violation. . . does not necessarily lead to a private relief" from a MCPA violation.  *Farell v. Story*, No. CIV.A. DKC 10-1274, 2010 WL 4963008, at *8 (D. Md. Dec. 1, 2010).  "A party who files a complaint with the Attorney General need not establish reliance leading to actual injury.  On the other hand, a private party who brings her own suit must establish that she has 'suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation.'"  *Id*. (citations omitted).  *See also Manago v. Cane Bay Partners VI, LLLP*, No. 20-CV-0945-LKG, 2022 WL 4017299, at *8 (D. Md. Sep. 2, 2022) (dismissing MCPA claim because complaint lacked factual allegations to show plaintiff relied on misrepresentations by defendants).

To support their argument that they are not required to plead reliance on a misrepresentation, and that the "MCPA's causation requirement has already been satisfied" by the alleged violation of MCLL, Plaintiffs cite *Toth v. Northwest Savings Bank,* an unreported 2013 Pennsylvania Court of Common Pleas decision analyzing the "Pennsylvania analogue to MCPA." (ECF No. 19 at p. 24, citing *Toth v. Nw. Sav. Bank*, GD–12–008014, 2013 WL 8538695 (Pa. Com. Pl., Mar. 1, 2003).)

*Toth* is unpersuasive not only because it bears on law not at issue here from a non-controlling court, but further because three years later, the Eastern District of Pennsylvania expressly declined to follow *Toth* for the very principle Plaintiffs urge its application here. Plaintiffs omit to mention that development in their papers filed with this court.[5]  In *Coleman v. Commonwealth Land Title Insurance Company,* the Eastern District of Pennsylvania explained:

> Plaintiffs cite to two Pennsylvania Court of Common Pleas
> decisions, both authored by the same judge, which held that
> justifiable reliance need not be shown in a class action asserting a

---

[5] The court assumes this was an unintentional oversight.

UTPCPL claim. *See* (Doc. No. 143 at 18-19 (citing *Toth v. Nw. Savings Bank,* GD–12–008014, 2013 WL 8538695 (Pa.Ct.Com.PL, Allegheny Mar. 1, 2003); *Patterson v. Fid. Nat'l Title Ins. Co.*, Nos. GD–03021176, GD–05–017476 (Pa.Ct.Com.Pl., Allegheny Dec. 14, 2015)).) However, the Court is more persuaded by the authority of the Third Circuit (*Hunt*), courts within this District (*Cohen; Markocki*), other district courts within Pennsylvania (*Slapikas*), and the Pennsylvania appellate courts (*Kern v. Lehigh Valley Hosp., Inc*, 108 A.3d 1281, 1290 (Pa.Super.Ct.2015)), all of which establish that justifiable reliance must be shown—individually—and thus UTPCPL claims will fail to meet class action requirements.

318 F.R.D. 275, 285 n.8 (E.D. Pa. 2016)

To state a claim for violation of MCPA, a plaintiff must allege (1) an unfair or deceptive practice or misrepresentation; (2) that is relied upon; and (3) causes her actual injury. *Manago*, 2022 WL 4017299, at \*8. Plaintiffs concede they do not plead reliance. (ECF No. 19 at p. 23.) Accordingly, their MCPA claim will be dismissed.

## C. Count III – Truth in Lending Act

Plaintiffs' Count III claims Defendant violated TILA by failing to make the required creditor disclosures. Defendant asserts that it does not extend "credit" as that term is defined by TILA and, even if it did, it cannot be classified as a "creditor" under TILA.

TILA was enacted by Congress to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 54 (2004) (quoting 15 U.S.C. § 1601(a)). To accomplish this purpose, the Act "requires a creditor to disclose information relating to such things as finance charges, annual percentage rates of interest, and borrowers' rights." *Id*. TILA "is meant to favor consumers;" so its provisions "must be 'absolutely complied with and strictly enforced.'" *Farwell v. Story*, No. CIV.A.DKC 10-1274,

2010 WL 4963008, at *6 (D. Md. Dec. 1, 2010) (quoting *Am. Mortg. Network, Inc. v. Shelton*, 486 F.3d 815, 819 n.4 (4th Cir. 2007)).

Defendant argues that Plaintiffs fail to plead facts sufficient to establish EarnIn is a "creditor" under TILA.  Specifically, Defendant contends, it does not extend credit and – even if access to earned wages were considered credit – EarnIn advances do not involve a user agreement to pay in more than four installments or a finance charge requirement (or conditional requirement) per 15 U.S.C. § 1602(g).  (ECF No. 16-1 at p. 15.)

**A.  Plaintiffs Plausibly Allege that EarnIn Advances Credit**

TILA defines credit as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. § 1602(f).  Regulation Z, which implements TILA, clarifies that "[c]redit includes a transaction in which a cash advance is made to a consumer . . . in exchange for the consumer's authorization to debit the consumer's deposit account, and where the parties agree . . . that the . . . deposit account will not be debited[ ] until a designated future date." 12 C.F.R. pt. 1026, Supp. I, Paragraph 2(a)(14) Credit, ¶ 2 ("Payday loans; deferred presentment"); *see also Orubo v. Activehours*, --- F. Supp. 3d ---, 2025 WL 1257695, at *5 (N.D. Cal., Apr. 30, 2025) (citing *id.*).

Plaintiffs allege that EarnIn advances its users money in exchange for authorization to debit their bank accounts.  (ECF No. 12 ¶¶ 15, 16, 50–55.)  The Amended Complaint alleges that in order to gain access to EarnIn's advances, users are required to verify that they will receive a paycheck on a future date and allow EarnIn to access the bank account where this paycheck will be deposited.  *Id.* ¶ 51 (alleging [u]sers cannot obtain cash advances without verifying their employment, linking the account to which paychecks are deposited to EarnIn's app, and allowing EarnIn to automatically debit linked accounts on payday).  Defendant argues that "no 'debt' is

created through the use of EarnIn's service because its customers, like Plaintiffs, have no obligation to pay anything—not interest or mandatory fees, and not even repayment of the wages accessed." (ECF No. 16-1 at p. 16.) As the Northern District of California explained in *Orubo*, however, "[n]owhere does the statute or the regulation implementing it indicate that courts should interpret 'credit' to require a legal obligation to repay." 2025 WL 1257695, at *5. This court agrees with its west coast sister court. It appears "entirely possible that EarnIn's system is in fact *more* effective in guaranteeing repayment than one that depended on pursuing legal debt collection remedies." *Id*. at *5 n.4.[6] Plaintiffs adequately plead that EarnIn advances credit as that term is defined by TILA and Regulation Z.

### B. Plaintiffs Plausibly Allege that EarnIn is a Creditor

Under TILA, the term "creditor"

> refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

---

[6] Defendant also cites *Harmon v. Fifth Third Bancorp*, No. 18-CV-00402, 2020 WL 2512820 (S.D. Ohio May 15, 2020), *aff'd*, 858 F. App'x 842 (6th Cir. 2021), for the proposition that "businesses with non-recourse structures" like EarnIn "are not required to make any disclosures under TILA." (ECF No. 16-1 at p. 16.) In *Harmon*, the court determined that a service that allowed the plaintiff instant access to check funds did not extend credit under TILA. This conclusion was rooted in the fact that the funds were guaranteed, verified by a third party, and because the plaintiff did not assume responsibility to repay the check amount after it was deposited. *Id*. In other words, the plaintiff did not incur debt because the check amount she received was immediately guaranteed and verified by a third-party. This "[c]ontemporaneous check-cashing" is not credit. Truth in Lending, 65 Fed. Reg. 17129, 17130 (Mar. 31, 2000). Therefore, the facts in *Harmon* are materially distinguished from the instant allegations that Plaintiffs received funds once they authorized and enabled Defendant to debit their bank accounts on a future date. *See id*. (explaining that situations in which "the consumer receives a cash advance in exchange for the consumer's check or authorization to debit the consumer's deposit account" is credit while contemporaneous check-cashing is not, as "there is no agreement to defer presentment of the consumer's check").

15 U.S.C. § 1602(g).  A "finance charge" is "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit."  *Id.* § 1605(a).

As relayed above, Defendant insists that even if its wage access service were classified as credit, EarnIn is still not a statutory creditor, as it does not include an agreement to pay in more than four installments or involving a finance charge (required or conditional), pursuant to 15 U.S.C. § 1602(g).  Defendant cites *Golubiewski* for the proposition that "incident to" as used in the definition of "finance charge" "requires a 'necessary connection' between the credit and the charge."  *Golubiewski v. Activehours, Inc.*, No. 3:22-CV-02078, 2024 WL 4204272, at *6 (M.D. Pa. Sept. 16, 2024) (citing *Household Credit Servs., Inc. v. Pfenning*, 541 U.S. 232, 329–41 (2004)).[7]  In *Pfennig*, the Supreme Court specified that while "incident to" "implies some necessary connection," it "does not make clear whether a substantial (as opposed to a remote) connection is required."  *Pfennig*, 541 U.S. at 240–41.

Plaintiffs adequately plead a connection between the wages EarnIn advances and the payment of lightning fees and tips.  "[U]sers must pay the lightning speed fee to use EarnIn's cash advance product for its intended and advertised purpose—as an instant source of cash."  (ECF No. 12 ¶ 26.)  "If users do not pay this charge, they cannot obtain the advertised version of EarnIn's cash advance product, or use the product for its intended purpose.  Instead, they obtain an inferior version of EarnIn's product, which provides access to cash days after a request is made."  *Id.* ¶¶ 28, 29.  *See also Orubo*, 2025 WL 1257695, at *7 (holding that "[e]ven if 'incident to' did mean

---

[7] In *Golubiewski*, the court dismissed a TILA claim against EarnIn after determining that EarnIn's "tips and fees are not a condition to credit."  2024 WL 4204272, at *6.  As explained by the court in *Orubo*, however, *Pfennig*, which the *Golubiewski* court relied on, held that TILA requires "some necessary connection" not "a necessary condition."  *Compare id. with Pfennig*, 541 U.S. at 240–41.  "A necessary *connection* is not the same as a necessary *condition*."  *Orubo*, 2025 WL 1257695, at *6 (emphasis in original).

mandatory, plaintiffs plead facts showing that the lightning speed fee was effectively mandatory," as the "payment of the lightning fee is a necessary condition to the extension of credit on the terms being offered, which include receipt of the credit within minutes" (citations omitted)).

As for tips, Plaintiffs allege: EarnIn (i) "mislead[s] users to believe that this is a mandatory charge, or to make paying this charge difficult to avoid;" (ii) presents consumers with non-zero tip options and requires them to navigate multiple screens to confirm they wish to forgo paying a tip; and (iii) represents that the tips "support the service" and "keep EarnIn running." (ECF No. 12 ¶¶ 34, 37–40, 42.) Plaintiffs adequately allege that the lightning fees and tips are connected to EarnIn's wage advance offerings. And because Defendant does not dispute that Plaintiffs allege EarnIn is the "person" to whom the debt arising from the transaction is payable, the court is persuaded that Plaintiffs allege adequate facts, accepted as true, on which a conclusion could be reasonably based that EarnIn is a creditor under TILA. Accordingly, Defendant's Motion will be denied as to Count III.

## IV. <u>CONCLUSION</u>

For the reasons set forth herein, by separate order, the Motion (ECF No. 16) shall be granted in part and denied in part.

/S/

Date: August 8, 2025

_____

Julie R. Rubin
United States District Judge