**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

ALISA JOHNSON, LAURA DAY, and
KOREY THOMAS,

     Plaintiffs,

v.

ACTIVEHOURS, INC. d/b/a EARNIN,

     Defendant.

Case No. 1:24-cv-02283-JRR

<u>**DEFENDANT ACTIVEHOURS, INC.'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS COUNT III OF PLAINTIFFS'
SECOND AMENDED COMPLAINT**</u>

**TABLE OF CONTENTS**

**Page**

LEGAL STANDARD.................................................................................................................3

ARGUMENT ..........................................................................................................................3

I.     Plaintiffs' MCDCA Claim Fails Because EarnIn Has Not Collected or Attempted to Collect a "Debt" From Plaintiffs.........................................................3

II.    Plaintiffs' MCDCA Allegations Also Cannot State a Claim Against EarnIn Because EarnIn Is Not a "Debt Collector" in Violation of the FDCPA...................7

III.    Plaintiffs Do Not (and Cannot) State a Plausible Claim for Relief Under Section 1692f(1) of the FDCPA and Such Allegations Cannot Support an MCDCA Claim ...........................................................................................................9

        1.    The Amount Debited From Plaintiffs' Accounts Were Expressly Authorized by Agreement ...........................................................................9

        2.    Plaintiffs' MCDCA Claim for Violation of 15 U.S.C. § 1692f(1) of the FDCPA Is Duplicative and Should be Dismissed ...............................11

IV.    Plaintiffs' Count III Should be Dismissed Because EarnIn Has Not Violated the MCLL and, Therefore, Did Not Violate the MCDCA.......................11

CONCLUSION.......................................................................................................................12

This Court should dismiss Count III of the Second Amended Complaint (Doc. 42) ("Amended Complaint"), Plaintiffs' newly added Maryland Consumer Debt Collection Act ("MCDCA") claim, because Plaintiffs have not pled sufficient facts to plausibly show that they may prevail under applicable law, Federal Rule of Civil Procedure 12, and the standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

This proposed class action arises from Plaintiffs' use of Activehours, Inc. d/b/a EarnIn's ("EarnIn") "earned wage access" product, known as Cash Out, which allows users to periodically obtain early, non-recourse access to a portion of their earned but unpaid wages. *See* Am. Compl. ¶¶ 15-16. Plaintiffs Alisa Johnson, Laura Day, and Korey Thomas sought and obtained Cash Outs to access *their own pay* and, in some instances, continued to request and obtain Cash Outs even after filing this action. EarnIn explicitly discloses to its users, including Plaintiffs, in its Cash Out User Agreement, in its mobile application, and on its website that they are under no obligation to repay the advances they access through EarnIn's Cash Out product. Moreover, EarnIn has no legal right to take action against, or recoup from, its users, including Plaintiffs, if they do not repay those earned wage advances to EarnIn.

Count III alleges that EarnIn violated the MCDCA, and Plaintiffs seek "damages"[1] and equitable relief.[2] *Id.* ¶¶ 109-11. Their claim, however, fails for a number of reasons.

First, to state a viable MCDCA claim, Plaintiffs must allege that EarnIn collected or attempted to collect a "debt." Because Plaintiffs had no obligation to repay EarnIn's advances,

---

[1] In Count III, Plaintiffs seek to recover not only the alleged tips and Lightning Speed fees associated with their transactions, but also the principal amounts of the advances they already received. This would effectively grant Plaintiffs a windfall by compensating them twice for the same funds.

[2] Any claim that Plaintiffs are entitled to equitable relief as a result of an alleged MCDCA violation should be dismissed as Plaintiffs do not cite to any statutes that independently entitle them to such relief. *See, e.g.*, *Horowitz v. Cont'l Cas. Co.*, No. CV DKC 14-3698, 2015 WL 9460111, at *6 (D. Md. Dec. 28, 2015), *aff'd*, 681 F. App'x 198 (4th Cir. 2017) (noting that "declaratory and injunctive relief is not available under the FDCPA, MCDCA, or the MCPA") (internal quotations and citation omitted).

those advances cannot be classified as "debt" under any viable interpretation of the MCDCA. Thus, the MCDCA does not apply and Plaintiffs' MCDCA claim fails.

Second, even if the MCDCA did apply, Plaintiffs only allege that EarnIn violated one of the eleven enumerated prohibitions in the MCDCA: engaging in conduct that violates the Fair Debt Collection Practices Act ("FDCPA"). Am. Compl. ¶¶ 104-11. Plaintiffs claim that because EarnIn, acting as a "collector," violated two sections of the FDCPA, those violations in turn serve as violations of the MCDCA. However, Count III is fatally deficient because EarnIn does not qualify as a "debt collector" under the FDCPA, and an FDCPA violation is the only basis supporting Plaintiffs' MCDCA claim. EarnIn could not have violated the FDCPA or, in turn the MCDCA, by the mere act of debiting Plaintiffs' bank accounts in the amount of the advances, plus any tips or Lightning Speed fees, which Plaintiffs voluntarily selected.

Plaintiffs additionally allege that EarnIn's Cash Out product violated the FDCPA's prohibition on "the collection of any amount unless it is expressly authorized by the agreement creating the debt *or* permitted by law." *Id.* ¶ 105-06 (emphasis added) (citing 15 U.S.C. § 1692f(1)). However, EarnIn could not have violated the FDCPA's prohibition on collection because the parties' agreement – which was confirmed multiple times in different ways – expressly authorized the amounts to be debited from Plaintiffs' bank account. The underlying Cash Out User Agreement and Transfer Out Authorization referenced in the Amended Complaint show that EarnIn and Plaintiffs agreed on the amounts to be collected by EarnIn. During the course of each individual Cash Out transaction, Plaintiffs expressly authorized the specific amount to be debited from their bank account for that transaction within the EarnIn app. Moreover, Plaintiffs' claims tied to this specific purported FDCPA violation also fail because the alleged misconduct is not "separate and distinct" from the conduct underlying Plaintiffs' other FDCPA-related claim. Accordingly, Count III should be dismissed with prejudice.

Finally, Plaintiffs allege that EarnIn did not have a right to debit advances or any associated tips and Lightning Speed fees from Plaintiffs' bank accounts because those amounts, according to Plaintiffs, were "void and unenforceable" under the Maryland Consumer Loan Law (the "MCLL")

2

and, therefore, violative of the MCDCA. Am. Compl. ¶¶ 104-11. But, EarnIn did not violate the MCLL because it is not a lender and does not issue loans or charge interest. Therefore, the advances and any subsequent debits of Plaintiffs' accounts are not void and unenforceable and cannot serve as a basis for Plaintiffs' MCDCA claim.

## LEGAL STANDARD

Rule 12(b)(6) authorizes a court to dismiss a cause of action that fails to satisfy the standard set forth in Rule 8. Under Rule 12(b)(6), a claim should be dismissed if it fails to contain "sufficient factual matter, [which], accepted as true, [ ] state[s] a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678 (internal citation omitted); *see also Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 776 (4th Cir. 2013). "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (emphasis added). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A conclusory assertion is a conclusion without "factual enhancement" to support the conclusion. *Id.* In other words, "[t]he plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Ashcroft*, 556 U.S. at 678)).

Although the Court must accept well-pleaded facts as true, conclusory allegations are not entitled to a presumption of truth. *Ashcroft*, 556 U.S. at 678-79; *see also Baltimore-Clark v. Kinko's Inc.*, 270 F. Supp. 2d 695, 698 (D. Md. 2003). Additionally, when a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility." *Ashcroft*, 556 U.S. at 678-79 (citation and quotations omitted).

## ARGUMENT

I.    **Plaintiffs' MCDCA Claim Fails Because EarnIn Has Not Collected or Attempted to Collect a "Debt" From Plaintiffs**

The MCDCA applies only to those "collecting or attempting to collect an alleged debt." Md. Code Ann., Com. Law § 14-202. Because users are not obligated to repay Cash Outs, those

transactions do not constitute "debt" under the statute, and the MCDCA therefore does not apply.

Although the term "debt" as used in the MCDCA is not defined in the Act, it has been interpreted by Maryland courts to mean "a money *obligation* arising from a consumer transaction." *Davis v. Toyota Motor Credit Corp.*, 251 F. Supp. 3d 925, 932 (D. Md. 2017), *rev'd in part on other grounds sub nom. Davis v. Complete Auto Recovery Servs., Inc.*, No. 20-1851, 2022 WL 17038956 (4th Cir. Nov. 17, 2022). Similarly, the Supreme Court of Maryland has defined "debt" under the FDCPA, which is foundational to and aligned with the MCDCA, as "any *obligation* or alleged *obligation* of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family or household purposes, whether or not such obligation has been reduced to judgment." *Goshen Run Homeowners Ass'n v. Cisneros*, 467 Md. 74, 96, 223 A.3d 917, 930 (2020) (emphasis added) (citing 15 U.S.C. § 1692a(5)); *see also* Md. Com. Law Code Ann. § 15-201(e) (Maryland Commercial Law subtitle governing fraudulent conveyances in debt collection defines "Debt" to include "any *legal liability*, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent.") (emphasis added). In other words, unlike the circumstances in this case, an *obligation* to repay the amount the claim is premised upon must exist for that amount to qualify as "debt" under the MCDCA.

Plaintiffs' allegations that EarnIn violated the MCDCA fail to sufficiently state a claim for relief because Plaintiffs are under no obligation to repay the advances, preventing them from being considered "debts" governed by the MCDCA. The Cash Out User Agreement on EarnIn's website clearly and affirmatively disclaims any obligation to repay. *See* Affidavit of Nakia Blackwell ("Blackwell Aff."), Ex. A, 1/15/24 Cash Out User Agreement at 5, *available at* https://www.earnin.com/privacyandterms/cash-out/terms-of-service/archives/2024-01-

15?fromTerms=true, last accessed November 14, 2025 (version in effect at the time of filing of

the original Complaint) (**"You do not have an obligation to repay any of the Cash Out Services**

**and EarnIn will have no legal or contractual claim or remedy against you based on your**

**failure to repay any of the Cash Out Services."**) (emphasis in original).[3]

Indeed, Plaintiffs' allegations regarding their Cash Outs, optional tips, and optional

Lightning Speed fees rely on self-serving excerpts incorporated into the Amended Complaint from

their transaction histories, selectively highlighting only those instances in which Plaintiffs chose

to pay tips and Lightning Speed fees and EarnIn successfully debited their accounts for repayment.

In reality, Plaintiffs' complete transaction histories with EarnIn tell a very different story. Plaintiff

Day, for example, did not repay one advance for almost six months, and *did not pay back two other*

---

[3] In deciding a motion to dismiss, the Court may properly consider "documents that are explicitly incorporated by reference or attached as exhibits to the complaint, as well as authentic documents submitted by the movant that are integral to the complaint[.]" *Talley v. Nat'l Gen. Car Ins.*, No. ADC-20-16, 2021 WL 4290596, at *2 (D. Md. Sept. 21, 2021) (citing *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)). A document is integral and can be considered at the motion to dismiss stage, where a plaintiff's claims turn on or are otherwise based on statements in the document. *See Pierce v. Nat'l Archives & Records Admin.*, No. CV TDC-19-2876, 2020 WL 7640835, at *2 (D. Md. Dec. 23, 2020). Plaintiffs' Amended Complaint includes screenshots of EarnIn's mobile application and allegations based on statements on EarnIn's website, including in its Cash Out User Agreement (Ex. A), and in its Transfer Out Authorization (Ex. B); therefore, those documents are incorporated by reference, integral to the Amended Complaint, and may be considered as part of EarnIn's Motion to Dismiss. *See, e.g.*, Am. Compl. ¶¶ 14-20, 35-40. Similarly, Plaintiffs' transaction histories (Exs. C, D, and E) may be considered without converting this Motion to Dismiss into a motion for summary judgment because they are integral to Plaintiffs' MCDCA claims and the transactions are incorporated by reference in the Amended Complaint repeatedly as the bases for Plaintiffs' claims. *See, e.g.*, Am. Compl. ¶¶ 22, 48-49, 91, 108-09. Indeed, Plaintiffs explicitly rely on their transaction histories to support their claims that the advances, tips, and fees were mandatory or obligatory. Moreover, the Court is also "permitted to consider facts and documents subject to judicial notice" at this stage, including publicly available documents such as EarnIn's Cash Out User Agreement (Ex. A), and the Transfer Out Authorization (Ex. B), both of which are publicly available. *See City of Columbus v. Trump*, 453 F. Supp. 3d 770, 793 (D. Md. 2020); *see also Jeandron v. Bd. of Regents of the Univ. Sys. of Md.*, 510 F. App'x 223, 227 (4th Cir. 2013) ("A court may take judicial notice of information publicly announced on a party's web site, so long as the web site's authenticity is not in dispute and 'it is capable of accurate and ready determination.'").

*advances at all*. *See* Blackwell Aff., Ex. C, Laura Day Transaction History at 1. Plaintiff Thomas has also *not paid back his six most recent advances at all*. *See* Blackwell Aff., Ex. E, Korey Thomas Transaction History at 1. Thus, when viewed in their entirety, the same transaction records Plaintiffs relied upon extensively in their Amended Complaint undermine their allegations that there is any obligation to repay the cash advances, tips, and Lightning Speed fees, or that the payment of tips and Lightning Speed fees is mandatory.[4] Plaintiffs cannot subvert the scope of the MCDCA by picking and choosing samples from the transaction histories to characterize their transactions as "debt" with an obligation to repay when the more fulsome transaction histories belie any such characterization.

To further support their claims that repayment of Cash Outs, tips, and fees is obligatory, Plaintiffs rely solely on allegations that EarnIn has developed an effective mechanism for obtaining repayment. *See* Am. Compl. ¶¶ 50-55. However, an alleged high rate of voluntary repayment does not create a legal obligation to repay where none exists. Plaintiffs' Amended Complaint effectively concedes this point, alleging that EarnIn *obtains* repayment on *virtually* every advance, rather than claiming that EarnIn *enforces* repayment on *every* advance. *See id*. ¶ 55.

Plaintiffs' characterization of EarnIn's user interface and automated repayment process as creating a "practical" obligation likewise fails. Am. Compl. ¶¶ 50-55. The mere presence of convenient repayment features or app functionality that facilitates voluntary repayment does not

---

[4] Relatedly, Plaintiff Johnson, who used EarnIn's Cash Out product extensively between June 2022 and September 2025, *left a tip only one time*. *See* Blackwell Aff., Ex. D, Alisa Johnson Transaction History. Notably, this single instance of tipping is the transaction that Plaintiffs chose to highlight as the only example of Plaintiff Johnson's transactions with EarnIn. *See* Am. Compl. ¶ 49. Similarly, Plaintiff Thomas chose to tip EarnIn on just over half of the numerous occasions that he used EarnIn's Cash Out product between January 2019 and September 2025. *See* Blackwell Aff., Ex. E, Korey Thomas Transaction History. Although Plaintiff Johnson elected to use the Lightning Speed feature at a higher rate, both Plaintiffs Thomas and Day chose to Cash Out numerous times without paying the Lightning Speed Fee. *See* Blackwell Aff., Exs. C, D, and E.

amount to coercion or convert a non-recourse advance into a debt. Of course, ease of repayment is not the same as enforceability of repayment and EarnIn's product design does not create any legal duty where the governing Cash Out User Agreement expressly disclaims one.

Because there is no obligation to repay the advances, tips, and Lightning Speed fees, these amounts are not "debt" under the MCDCA, and as a result, Plaintiffs fail to state a claim in Count III of their Amended Complaint, and it should be dismissed with prejudice.

II.    **Plaintiffs' MCDCA Allegations Also Cannot State a Claim Against EarnIn Because EarnIn Is Not a "Debt Collector" in Violation of the FDCPA**

Plaintiffs' claim that EarnIn violated Section 14-202(11) of the MCDCA by violating two provisions of the FDCPA fails because the FDCPA does not apply to EarnIn or its Cash Out advances. Here, Plaintiffs contend that EarnIn violated the following two FDCPA sections, and as a result violated Section 14-202(11) of the MCDCA:

- 15 U.S.C. § 1692f provides that "[a] *debt collector* may not use unfair or unconscionable means to collect or attempt to collect any debt." (emphasis added).

- 15 U.S.C. § 1692e states that "[a] *debt collector* may not use any false, deceptive or misleading representation or means in connection with the collection of any debt." (emphasis added).

*See* Am. Compl. ¶¶ 105-08.

Based on the plain language of the FDCPA, therefore, both sections only apply to "debt collectors." The FDCPA explicitly excludes from the definition of "debt collector" an entity that originated the funds it is attempting to collect. *See* 15 U.S.C. § 1692a(6)(F); *see also Wilson v. Shapiro Brown & Alt, LLP*, No. RWT 16-cv-3303, 2017 WL 3608182, at *3 (D. Md. Aug. 21, 2017) ("Here, Wells Fargo originated the Loan and remained the mortgage servicer of the Loan. Accordingly, Wells Fargo is not a 'debt collector' under the FDCPA and Plaintiffs cannot, as a matter of law, sustain a claim under the FDCPA against Defendant Wells Fargo."); *McClain v. Wells Fargo Bank, N.A.*, No. CV TDC-17-1094, 2018 WL 1271231, at *6 (D. Md. Mar. 8, 2018),

*aff'd*, 738 F. App'x 797 (4th Cir. 2018) (employing the statutory definition of a "debt collector" as a person collecting a debt "owed or due another"). Therefore, EarnIn cannot be a "debt collector" under the FDCPA because EarnIn originates the very advances that Plaintiffs allege it later collects and, without a violation of the FDCPA, Plaintiffs' MCDCA claim fails because it is entirely reliant on there being a violation of the FDCPA.[5] *See* Am. Compl. ¶¶ 13-15.

The Fourth Circuit has held that the MCDCA incorporated only the FDCPA's "substantive provisions," and not its definition of "debt collectors." *See Alexander v. Carrington Mortgage Servs., LLC*, 23 F.4th 370, 372-75 (4th Cir. 2022). The Court did not, however, address whether the FDCPA, through the MCDCA, applies to first-party collectors. *Id.* In *Alexander*, the defendant was a third-party mortgage servicer collecting payments on a mortgage loan on behalf of a lender. *Id.* at 373. Because those payments qualified as a "debt," the court concluded that the defendant could be considered a "collector" under the MCDCA even though the mortgage was not in default, a condition that the FDCPA definition would otherwise require. *See id.* at 372-75.

Here, there can be no dispute that EarnIn originates the advances Plaintiffs claim violated the FDCPA—EarnIn does *not* collect on the "debt"[6] of another. *See* Am. Compl. ¶ 13 ("EarnIn offers a cash advance product to Maryland consumers over the internet."); *Id.* ¶ 14 ("EarnIn offers this product through a lending app called 'EarnIn.'"); *Id.* ¶ 15 ("The app provides up to $100 in advances at a time, and up to $750 per pay period."). Even if the Court accepted Plaintiffs' allegations at face value, the Amended Complaint describes, at most, EarnIn's own efforts related to its advances, not the collection of another's debt. The FDCPA applies only to third-party debt collectors, and the MCDCA's incorporation of those provisions cannot extend to EarnIn's model.

---

[5] Nor can EarnIn be a "collector" under the MCDCA as it does not collect "debt." *See supra* Section I; Md. Code Ann., Com. Law § 14-201(b).

[6] As set forth above, there is also no "debt" being collected as Plaintiffs have not and cannot allege that they had an obligation to repay any of the advances taken. *See supra* Section I; *see also* 15 U.S.C. § 1692a(5) (defining "debt" as "any *obligation* or alleged *obligation* of a consumer to pay money . . .") (emphasis added).  Accordingly, because Cash Outs do not qualify as "debt," EarnIn could not have violated the FDCPA by debiting Plaintiffs' accounts for the Cash Out amounts.

Accordingly, EarnIn cannot have "violated" any section of the FDCPA to support an MCDCA claim and Count III should be dismissed.

**III.    Plaintiffs Do Not (and Cannot) State a Plausible Claim for Relief Under Section 1692f(1) of the FDCPA and Such Allegations Cannot Support an MCDCA Claim**

To support their MCDCA claim, Plaintiffs allege that EarnIn's Cash Out advances violated Section 1692f(1) of the FDCPA, which prohibits "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt *or* permitted by law." (emphasis added). Plaintiffs' sole allegation is that EarnIn violated Section 1692f(1) by violating the MCLL, making the advances "void and unenforceable." *See* Am. Compl. ¶ 108 (citing Sections 12-314(d)(1) and 12-314(d)(2) of the MCLL).

**1.    The Amount Debited From Plaintiffs' Accounts Were Expressly Authorized by Agreement**

Conspicuously absent from Plaintiffs' Amended Complaint is *any* allegation that the amounts debited from their accounts were not "expressly authorized by the[ir] agreement" with EarnIn. *See Richardson v. Midland Funding, LLC,* No. CIV.CCB-13-1356, 2013 WL 6719110, at *9 (D. Md. Dec. 18, 2013), *aff'd*, 583 F. App'x 124 (4th Cir. 2014) (finding plaintiff failed to state a claim under Section 1692f(1) by failing to provide any facts as to the alleged agreements with the defendants to determine if such amounts were authorized). In fact, Plaintiffs' allegations demonstrate the opposite. Specifically, Plaintiffs allege that to obtain advances "EarnIn requires users to," among other things, "*authorize* EarnIn to automatically debit the linked accounts on payday *in an amount that is equal to the advance a user receives and the charges a user agrees to pay*." *Id.* ¶ 50 (emphasis added); *see also id.* ¶ 73 (referring to the "amount that a user *authorizes* EarnIn to debit from their bank account on payday) (emphasis added); *id.* ¶ 113 ("Through its cash advance product, Defendant advances money to its users, and its users, in return, *authorize*

9

Defendant to debit their bank accounts on their following payday, in an amount equal to the money advanced and any charges users are requested to pay.") (emphasis added). Thus, Plaintiffs expressly authorized EarnIn to debit the amounts advanced, plus any tips or Lightning Speed fees.

Moreover, the language in the standard Transfer Out Authorization referred to by these allegations explicitly provides that the users, i.e. Plaintiffs, upon agreement and in exchange for receiving a Cash Out "authorize EarnIn, or its third-party processor, to (1) initiate a one-time electronic debit from the bank account you designated . . . in the amount of the Transfer Out you requested, plus any voluntary tip you chose, plus the Lightning Speed fee if applicable . . . ." Blackwell Aff., Ex. B, Transfer Out Authorization at 1. The Transfer Out Authorization further states that the user "agree[s] that the authorizations you provide in this Transfer Out Authorization Agreement will remain in effect until you notify EarnIn that you wish to revoke these authorizations."[7] *Id.* And, Plaintiffs agreed to the mobile application's explicit statement that "[b]y cashing out, you agree to the Transfer Out Authorization Agreement" each time they finalized a Cash Out transaction.

Plaintiffs' agreements with EarnIn providing express authorization to debit the amount of the Cash Out advances, plus any Lightning Speed fees or tips, combined with Plaintiffs' failure to allege anything to the contrary, necessarily precludes any claim under the MCDCA based on Section 1692f(1) of the FDCPA. *See, e.g.*, *Pollin v. Community Management Corp.*, No. CV GLR-22-1700, 2023 WL 6067119, at *3 (D. Md. Sept. 18, 2023) (dismissing MCDCA claim where governing documents "permit[ted] the collection of convenience fees" despite the fact that such fees are "generally impermissible under Maryland law"); *Grant-Fletcher v. McMullen & Drury,*

---

[7] EarnIn's Cash Out User Agreement further explains that to use Cash Out Services, users "must authorize debits from [their]" financial accounts. Blackwell Aff., Ex. A, Cash Out User Agreement at 5.

*P.A.*, 964 F. Supp. 2d 514, 526 (D. Md. 2013) (finding attempt to collect attorneys' fees associated with collecting debt was authorized by agreement and granting motion for summary judgment on FDCPA claim).

> **2.    Plaintiffs' MCDCA Claim for Violation of 15 U.S.C. § 1692f(1) of the FDCPA Is Duplicative and Should be Dismissed**

The same conduct – debiting Plaintiffs' accounts for advances that were purportedly "void and unenforceable" – also serves as the basis to support Plaintiffs' other claimed violation of the FDCPA under Section 1692e(5). *See* Am. Compl. ¶ 108 (citing Sections 12-314(d)(1) and 12-314(d)(2) of the MCLL). Because "Section 1692f's prohibitive reach extends only to misconduct that is separate and distinct from other FDCPA violations," and Plaintiffs' rely upon the same EarnIn conduct to support both alleged FDCPA violations, any claims under Section 1692f(1) must fail. *See Archie v. Nagle & Zaller, P.C.*, 790 F. App'x 502, 503 n.1 (4th Cir. 2019) (collecting cases); *see also Contee v. Rushmore Loan Management Servs. LLC*, No. CV 23-0588-BAH, 2024 WL 4416877, at *6 (D. Md. Oct. 4, 2024) (dismissing separate Section 1692f(1) conduct premised upon the same conduct that plaintiff alleged violated Section 1692e of the FDCPA). Accordingly, to the extent Plaintiffs claim that EarnIn violated the MCDCA by violating 15 U.S.C. § 1692f(1), Count III of the Amended Complaint should be dismissed with prejudice.

**IV.    Plaintiffs' Count III Should be Dismissed Because EarnIn Has Not Violated the MCLL and, Therefore, Did Not Violate the MCDCA**

Plaintiffs' MCDCA claim is entirely premised on Plaintiffs' assertions that EarnIn violated the MCLL, making EarnIn's advances to Plaintiffs "void and unenforceable." *See* Am. Compl. ¶ 108 (citing to the MCLL and asserting that "Defendant violated these provisions [of the FDCPA]" by debiting Plaintiffs' bank accounts for advances, "even though Defendant did not have the right to enforce those account debits because . . . Defendant's advances were void and unenforceable").

Although this Court previously denied EarnIn's Motion to Dismiss Plaintiffs' MCLL claims,[8] for purposes of this Motion and for subsequent appeal, EarnIn maintains, for the reasons set forth in its Motion (*see* Doc. 16-1 at 4-9), that 1) the MCLL does not apply to EarnIn because it is not a "lender," and 2) EarnIn has not otherwise violated the MCLL because it does not issue "loans" or charge "interest." Therefore, because Plaintiffs cannot state a claim against EarnIn under the MCLL, Plaintiffs' MCDCA claim based solely on EarnIn's purported violation of the MCLL must be dismissed.

## CONCLUSION

Based on the foregoing, Defendant requests that this Court enter an Order granting Defendant's Motion to Dismiss Count III of Plaintiffs' Second Amended Complaint with prejudice.

Dated: November 14, 2025          Respectfully submitted,

*/s/ Jason C. Rose*
Jason C. Rose (Bar No. 27684)
Raquel L. Flynn (Bar No. 30591)
VENABLE LLP
750 E. Pratt Street, Ste. 900
Baltimore, Maryland 21202
Telephone: (410) 244-7553
Facsimile: (410) 244-7742
JCRose@Venable.com
RLFlynn@Venable.com

*Attorneys for Defendant Activehours, Inc.*

---

[8] EarnIn also maintains and preserves for appeal that, for the reasons stated in its Motion to Dismiss, Plaintiffs' claims under the Truth in Lending Act (Count IV of the Second Amended Complaint) should be dismissed for failure to state a claim. *See* Doc. 16-1 at 12-17.

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record that are registered with the Court's CM/ECF system.

*s/ Jason C. Rose*
Jason C. Rose