**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **KOREY THOMAS,**<br><br>***Plaintiff,***<br><br>**v.**<br><br>**ACTIVEHOURS, INC. d/b/a EARNIN,**<br><br>***Defendant.*** | **Civil No.: 1:24-cv-02283-JRR** |

**MEMORANDUM OPINION**

Pending before the court is Defendant ActiveHours, Inc. d/b/a EarnIn's Motion to Dismiss Count III of Plaintiff's Second Amended Complaint.[1] (ECF No. 43; the "Motion.") The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons set forth below, the Motion will be denied.

## I. BACKGROUND[2]

### A. EarnIn's Business Model

Plaintiff's Second Amended Complaint concerns Defendant's cash advance mobile application (or "app"), EarnIn.[3] Defendant advertises EarnIn as a way for users to access their earned wages in advance of their payday. (ECF No. 42 ¶ 16; "Second Amended Complaint.") The app provides cash advances of up to $100 at a time, and up to $750 per pay period. *Id.* ¶ 15. EarnIn requires users to "(i) have an employer that pays them regularly; (ii) link the bank account to which paychecks are deposited to [the app]; and (iii) authorize EarnIn to automatically debit the linked accounts on payday in an amount that is equal to the advance a user receives and the charges a user agrees to pay." *Id.* ¶ 50. "[B]efore issuing cash advances,

[1] Former Plaintiffs Day and Johnson are no longer parties to this action. (ECF Nos. 46, 47, 58, 59.)
[2] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Second Amended Complaint (ECF No. 42). *See Byers v. Painter*, 173 F. 4th 155, 158 (4th Cir. 2026). Additionally, much of the court's background incorporates the background set forth in the court's memorandum opinion at ECF No. 27.
[3] As set forth above, Defendant does business as EarnIn; this is also the name of Defendant's app about which Plaintiff complains.

EarnIn performs a proprietary credit check on a user's linked bank account to ensure that the account will have sufficient funds to repay EarnIn's automatic account debits on payday." *Id.* ¶ 52.

EarnIn advertises that all users can instantly access wage advances; however, EarnIn asks all users to pay "lightning speed fees" ranging from $1.99 to $3.99 depending on the amount of the requested advance. *Id.* ¶¶ 16-17, 24. If users do not elect to pay the lightning speed fee, they will not receive access to the cash advance for "days after a request is made." *Id.* ¶¶ 28–29. When a user requests an advance, EarnIn also prompts the user to pay a "tip" for EarnIn's services. (ECF No. 42 at ¶ 32.) EarnIn represents these tips as necessary to "support the service" and to "keep EarnIn running for the rest of the community." *Id.* ¶ 42. EarnIn presents users with four non-zero tip options and users must navigate through multiple prompts to decline to pay a tip. *Id.* ¶¶ 36–41. A majority of EarnIn's users in Maryland pay EarnIn tip charges. *Id.* ¶ 45.

**B. Maryland's Regulatory Framework**

Plaintiff alleges Defendant's EarnIn model and practices violate the Maryland Consumer Loan Law ("MCLL"), MD. CODE ANN., COM. LAW § 12-301, *et seq.* (Count I); the Maryland Consumer Protection Act ("MCPA"), MD. CODE ANN., COM. LAW § 13-301, *et seq.* (Count II);[4] the Maryland Consumer Debt Collection Act ("MCDCA"), MD. CODE ANN., COM. LAW § 14-201, *et seq.* (Count III); and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq*. (Count IV). Defendant moves to dismiss the MCDCA claim. (ECF No. 43.)

The MCDCA protects the rights of consumers by prohibiting how and when a "collector" may "collect[] or attempt[] to collect an alleged debt." MD. CODE ANN., COM. LAW § 14-202. The statute defines "[c]ollector" as a "person collecting or attempting to collect an alleged debt

---

[4] As discussed at greater length below, the court previously dismissed Count II in its memorandum opinion and order at ECF Nos. 27 and 28. While Plaintiff acknowledges the court's previous ruling as to Count II, Plaintiff includes Count II in the Second Amended Complaint "to preserve the claim for any subsequent appeal." (ECF No. 42 at p. 17 n.6.)

arising out of a consumer transaction." *Id.* § 14-201(b). A collector may be an individual, corporation, statutory trust, or "any other legal or commercial entity." *Id.* § 14-201(d). A consumer transaction constitutes "any" transaction where a consumer seeks "property, services, money, or credit" for "personal, family, or household purposes." *Id.* § 14-201(c). When collecting or attempting to collect a debt, collectors are prohibited from engaging in any practice delineated at § 14-202, which includes "engag[ing] in any conduct that violates §§ 804 through 812 of the federal Fair Debt Collection Practices Act [('FDCPA')]." *Id.* § 14-202(11).[5]

Like the MCDCA, the FDCPA protects consumers from "abusive, deceptive, and unfair debt collection practices" by debt collectors. 15 U.S.C § 1692(a). The statute's stated purposes include promoting "consistent [s]tate action to protect consumers" from such practices. *Id.* § 1692(e). The FDCPA prohibits collectors from engaging in unfair, harassing, or misleading practices. *Id.* §§ 1692f, 1692e; *see also* § 1692(a), (e) (stating congressional findings and purposes).

### C. Procedural Posture

Plaintiff Thomas, an individual EarnIn user residing in Maryland, received an advance of $100 and paid a lightning speed fee of $3.99 and tip of $3.00. (ECF No. 42 ¶¶ 11, 49.) On August 7, 2024, then-Plaintiffs initiated this action on behalf of themselves and a putative class of similarly situated individuals. (ECF No. 1.) On October 31, 2024, then-Plaintiffs filed their First Amended Class Action Complaint (ECF No. 12; the "First Amended Complaint"). In the First Amended Complaint, then-Plaintiffs sought to certify a class of "[a]ll persons that obtained an advance or loan from Defendant, and resided in Maryland when they signed up for the EarnIn app, or resided in Maryland when they obtained an advance or loan from Defendant." *Id.* ¶ 76. On Defendant's motion to dismiss the First Amended Complaint (ECF

[5] Sections 804 through 812 of the FDCPA (15 U.S.C. §§ 1692b-1692j) are incorporated under § 14-202(11) of the MCDCA, so violations of these FDCPA provisions constitute violations of the MCDCA.

No. 16), this court denied the Motion as to the MCLL and TILA claims but granted the Motion as the MCPA claim. (ECF Nos. 27, 28.) Specifically as to the MCLL claim, the court reasoned that then-Plaintiffs plausibly alleged that the Defendant was in the "business of making loans," implicating the MCLL. (ECF No. 27 at pp. 6-11.) The presence or absence of an obligation to repay wage advances was not fatal to the claims at that stage of litigation given the broad sweep of the statute's language and its applicability to a range of transaction types. *Id.* *See also* MD. CODE ANN., COM. LAW § 12-303(a)(2). As to the TILA claim, the court similarly found that then-Plaintiffs plausibly alleged that Defendant advances credit. (*Id.* at p. 16.) Since TILA did not define "credit" to mean a legally enforceable obligation to pay, EarnIn's cash advances were plausibly subject to TILA as a matter of law. (*Id.* at pp. 16–17.) There was also a plausible alleged nexus between the lightning fees and tip charges and Defendant's offered wage advances. (*Id.* at p. 18.)

After Defendant filed its answer to the First Amended Complaint (ECF No. 32), the court issued a scheduling order. (ECF No. 33.) With consent of Defendant, Plaintiff then sought leave to file the Second Amended Complaint. (ECF No. 40.) The court granted Plaintiff's motion and ordered the Second Amended Complaint (ECF No. 42) be docketed. (ECF No. 41.) Plaintiff's Second Amended Complaint maintains the MCLL and TILA claims and adds an MCDCA claim. (ECF No. 42.) Specifically, Plaintiff alleges a violation of § 14-202(11) of the MCDCA, which incorporates provisions of the federal FDCPA. 15 U.S.C. §§ 1692, *et seq.* To that end, Plaintiff alleges two violations of the FDCPA—that Defendant's debiting Plaintiff's bank account violated 15 U.S.C. § 1692f(1) and 15 U.S.C. § 1692e(5). Defendant filed the instant Motion to dismiss Plaintiff's newly-added MCDCA claim. (ECF No. 43.)

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits dismissal where a plaintiff fails to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint." *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017), *as amended* (Jan. 20, 2017) (quoting *Papasan v. Allain*, 478 U.S. 265, 283 (1986)). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678).

A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level, thereby nudging its claims across the line from conceivable to plausible." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (citation modified) (quoting *Twombly*, 550 U.S. at 555, 570). The plausibility requirement is not "a probability requirement but rather a mandate that a plaintiff 'demonstrate more than a sheer possibility that a defendant has acted unlawfully.'" *In re Birmingham*, 846 F.3d at 92 (quoting *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)). Reliance on "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

**B. Consideration of Exhibits**

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court generally does not consider evidence outside of a complaint. The court may, however, properly consider "documents integral to and relied upon in the complaint, . . . so long as the plaintiff does not question their authenticity." *Fairfax v. CBS Corp.*, 2 F.4th 286, 292 (4th Cir. 2021). "An integral document is a document that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)). The court is entitled to "consider documents that are explicitly incorporated into the complaint by reference, and those attached to the complaint as exhibits" as part of the "pleading for all purposes." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (first citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007); then citing FED. R. CIV. P. 10(c)); FED R. CIV. P. 10(c) (pertaining to "written instruments" attached as exhibits to a pleading). The court may also "properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts,'" meaning a fact "not subject to reasonable dispute because it," *inter alia*, "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009)); FED. R. EVID. 201(b).

Defendant attaches three exhibits it asks the court to consider in ruling on the Motion: Exhibit A, EarnIn's Cash Out Agreement; Exhibit B, EarnIn's Transfer Out Authorization

Agreement; and Exhibit E, Plaintiff Thomas's EarnIn Transaction History.[6, 7] (ECF Nos. 43-3, 43-4, 43-7.) The Agreements are archived on EarnIn's website.[8] Defendant argues that since these documents are "publicly available," the court may take judicial notice of them. (ECF No. 43-1 at p. 5 n.3.) In response, Plaintiff argues the proffered exhibits are not properly considered because they are not incorporated by reference, "integral to and explicitly relied upon in the complaint," or matters of public record. (ECF No. 48 at p. 8 n.3.) Plaintiff does not appear to dispute the authenticity of the exhibits.

Courts often take judicial notice of publicly available information on government websites. *See, e.g.*, *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004) (taking judicial notice of publicly available statistics published on a government website). And under more limited conditions, courts have also judicially noticed information published on privately owned websites. *Jeandron v. Bd. of Regents of the Univ. Sys. of Md.*, 510 F. App'x 223, 227 (4th Cir. 2013) (taking judicial notice of information on public university website when its authenticity was not in dispute); *Continental Cas. Co. v. Under Armour, Inc.*, 537 F. Supp. 2d 761, 768 (D. Md. 2008) (taking judicial notice of party's business website); *see also Jones v. Twitter*, No. RDB-20-1963, 2020 WL 6263412, at *1 n.2 (D. Md. Oct. 23, 2020) (taking judicial notice of terms of service explicitly incorporated into the complaint by reference and concluding it was an appropriate subject for judicial notice). The instant user agreements are publicly available on EarnIn's website, and their authenticity is not disputed. In view of the foregoing, the court will take judicial notice of the User and Authorization Agreements. (EDF Nos. 43-3, 43-4.)

---

[6] Defendant also attaches Exhibits C and D, which reflect EarnIn transaction histories of former Plaintiffs Alisa Johnson and Laura Day. (ECF Nos. 43-5, 43-6.) Because Johnson and Day are no longer Plaintiffs to this action, (ECF Nos. 46, 47, 58, 59), the court does not consider these exhibits in ruling on the instant Motion.

[7] In addition to its exhibits, Defendant attached an Affidavit by Nakia Blackwell ("Blackwell Affidavit") attesting to the content and veracity of the Exhibits. (ECF No. 43-2.)

[8] Exhibits A and B are prior versions of the Cash Out User Agreement and Transfer Out Authorization Agreement archived on EarnIn's website at the Terms and Conditions page. *Cash Out User Agreement*, EarnIn, https://www.earnin.com/privacyandterms/cash-out/terms-of-service/archives/2025-09-24?fromTerms=true (last visited Aug. 13, 2026); *Transfer Out Authorization Agreement*, EarnIn, https://www.earnin.com/privacyandterms/transfer-out-authorization-agreement/archives/2024-11-25?fromTerms=true (last visited Aug. 13, 2026).

The court is not persuaded, however, to consider Exhibit E, reflecting Plaintiff's EarnIn transaction history. (ECF No. 43-7.) Plaintiff does not incorporate or attach any transaction history to the Second Amended Complaint. *See* FED. R. CIV. P. 10(c). Indeed, the Second Amended Complaint makes no mention of Defendant's internally maintained transaction history records. That Plaintiff references one EarnIn transaction in the Second Amended Complaint (ECF No. 42 ¶ 49) does not persuade the court that Plaintiff implicitly incorporated Defendant's internal tracking of Plaintiff's comprehensive transaction history into the pleading. *See Goines*, 822 F.2d at 166 (citing *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)) (finding that "a few quotes from and references to" a report did not incorporate the report). Similarly, contrary to Defendant's assertion, Defendant's document reflecting Plaintiff's transaction history is not integral to the Second Amended Complaint, which is to say, it does not by its very existence give rise to the legal rights asserted. *See Chesapeake Bay Found.*, 794 F. Supp.2d at 611, *supra*. Accordingly, the court will not consider Exhibit E in its analysis of Defendant's Motion.

## III. ANALYSIS

Defendant raises three arguments in its Motion: Plaintiff's MCDCA claim fails as a matter of law because 1) its advances do not constitute "debt" under the MCDCA, 2) the MCDCA does not apply to EarnIn because the statute is only applicable to third party debt collectors, and 3) Plaintiff does not plausibly allege that EarnIn tips and lightning speed fees are void and unenforceable under the MCLL and thus violative of the MCDCA because EarnIn is not subject to the MCLL; and relatedly, the FDCPA claims are duplicative. (ECF No. 43-1 at pp. 3–12.)

### *A. Plaintiff plausibly alleges transactions with EarnIn constitute "debts."*

First, Defendant argues Plaintiff does not plausibly allege that transactions between Plaintiff and EarnIn constitute a "debt" as defined by the MCDCA. Specifically, Defendant

argues that in order for an obligation to constitute a "debt" under the MCDCA, the debtor must have a legally enforceable obligation to repay the creditor. (ECF No. 43-1 at pp. 3–4.) As noted above, the MCDCA prohibits certain tactics and behaviors by collectors when "collecting or attempting to collect an alleged debt." MD. CODE ANN., COM. LAW § 14-202. While the MCDCA defines "collector," it does not define "debt." *Id.* § 14-201(b).

The "cardinal rule" of statutory interpretation is to "ascertain and effectuate the intent of the legislature." *Moore v. State*, 388 Md. 446, 452 (2005). Statutory interpretation begins with the plain language of the statute. *Oakland v. Mountain Lake Park*, 392 Md. 301, 316 (2006). If a statute has "more than one reasonable interpretation, it is ambiguous." *Moore*, 388 Md. at 453. The court resolves that ambiguity "in light of the legislative intent, considering the legislative history, case law, and statutory purpose." *Comptroller v. Phillips*, 384 Md. 583, 591 (2005); *Deville v. State*, 383 Md. 217, 33 (2004) (noting that courts "consider the meaning of the language of the statute and how that language relates to the overall meaning, setting, and purpose of the act"). Courts "avoid a construction of the statute that is unreasonable, illogical, or inconsistent with common sense." *Gwin v. MVA,* 385 Md. 440, 462 (2005). This includes avoiding interpretations that create surplusage or render words meaningless. *Moore,* 388 Md. at 453; *see also Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) ("The starting point in discerning congressional intent is the existing statutory text, . . . and not the predecessor statutes.")[9]

The court's analysis begins and ends with the plain text. When a statutory term is undefined the court looks first to the term's "ordinary or natural meaning." *HollyFrontier Cheyenne Refining, LLC, v. Renewable Fuels Ass'n*, 594 U.S. 382, 388 (2021). Black's Law Dictionary defines "debt" as "to owe, be under obligation," "what is owed or due," "liability

---

[9] This case discussing references to predecessor statutes is responsive to Plaintiff's argument that TILA's definition of "debt" is dispositive on the issue. (ECF No. 48 at p.4.) TILA was enacted in 1968, prior to enactment of the FDCPA and MCDCA in 1977 and 1975, respectively. As a result, its text is not considered in this portion of the analysis, as it predates the MCDCA and FDCPA. *See* 15 U.S.C. § 1601; 15 U.S.C. § 1692; MD. CODE ANN., COM. LAW § 14-201.

on a claim; a specific sum of money due by agreement or otherwise[,]" or "[t]he aggregate of all existing claims against a person, entity, or state." *Debt*, *Black's Law Dictionary* (12th Ed. 2024). Plaintiff's response to the Motion cites similar definitions. (ECF No. 48 at p. 4.) While words like "obligation" and "liability" imply some legal obligation, these terms are interchangeable in many circumstances with "owe" or "owed," which do not necessarily connote a legal obligation in their common usage. Accordingly, the ordinary meaning of the word does not squarely support either party's argument.

The term "debt" must also be read in context with the whole of the MCDCA. *Kaczorowski v. Mayor & City Council of Baltimore*, 309 Md. 505, 514 (1987) ("The 'meaning of the plainest language' is controlled by the context in which it appears.") (quoting *Guardian Life Ins. Co. of Am. v. Ins. Comm'r of Md.*, 293 Md. 629, 642 (1982)). The MCDCA uses the phrase "alleged debt" in its definition of "collector," § 14-201(b), and in its general prohibitory provision at § 14-202. MD. CODE ANN., COM. LAW §§ 14-201, 14-202(b). Plaintiff argues that the General Assembly's use of the word "alleged" contemplates the existence of a debt in the absence of a legal obligation to pay. (ECF No. 48 at p. 5.) Defendant maintains that the best reading of "debt" requires that an obligation be legally enforceable, even an "alleged" debt. (ECF No. 43-1 at pp. 2, 4.) Maryland courts have diverged along these two readings of the MCDCA.[10] *Compare Fontell v. Hassett*, 870 F. Supp. 2d 395, 405–406 (D. Md. 2012) (reasoning that because "[t]he MCDCA . . . is meant to proscribe certain methods of debt collection," the statute presumes the debt themselves are legally enforceable), *with Chavis v. Bilbaum & Associates*, 476 Md. 534, 559–60 (2021) ("The broad reach of the statute is

[10] Definitions of "debt" in other provisions of the Maryland Code do not militate in favor of either party's proposed definition. Title 15 of the Maryland Commercial Law Code defines debt to "include[] any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent." MD. CODE ANN., COM. LAW § 15-201(e). Defendant emphasizes the "legal liability" portion of this provision. (ECF No. 43-1 at p. 4.) But this definition also covers "unmatured," "unliquidated," and "contingent" debts, including presently unenforceable debts within its ambit." MD. CODE ANN., COM. LAW § 15-201(e). The statute thus contemplates, at least in some respect, both enforceable and unenforceable debts. Similarly, the Business Regulation Title of the Maryland Code includes a definition of "consumer claim" as a claim against a borrower for "money owed or said to be owed." MD. CODE ANN., BUS. REG. § 7-101(e)(1). Here too, Plaintiff's interpretation of "debt" remains plausible.

indicated by the use of the phrase 'alleged debt'—the conduct proscribed by the [MCDCA] could concern both valid debts and invalid ones.").

Defendant argues that Maryland courts' interpretations of "debt" as defined by the FDCPA are instructive here, given that the MCDCA partially incorporates the FDCPA, *see* ECF No. 43-1 at p. 4, but this argument is unpersuasive in view of the Fourth Circuit's holding in *Alexander v. Carrington Mortgage Services., LLC*, 23 F.4th 370 (4th Cir. 2022) (finding that the MCDCA incorporates only the FDCPA's "substantive provisions").[11]

In *Alexander*, the Fourth Circuit considered the significance of the MCDCA's incorporation of §§ 804–812 of the FDCPA. *Id.* As the *Alexander* court specified, the General Assembly's choice not to incorporate the statutory definitions in § 803 of the FDCPA was "intentional." *Id.* at 375. This court's obligation to "ascertain and effectuate the intent of the legislature," *see Moore*, 388 Md. at 452, *supra*, compels it to heed that legislative decision. Overriding an unambiguous legislative decision and incorporating a definition from the very provision of the FDCPA the General Assembly intentionally excluded would supplant the legislature's discretion with the court's. *In re J.C.N.*, 460 Md. 371, 391 (2018). Further, the Fourth Circuit emphasized that the MCDCA has a broad remedial purpose. *Alexander*, 23 F.4th at 372 (describing the MCDCA as a "remedial consumer protection statute[]"). It is intended to "protect the public from unfair or deceptive trade practices by creditors engaged in debt collection activities." *Andrews & Lawrence Pro. Servs. v. Mills*, 467 Md. 126, 223 (2020). Maryland courts emphasize that it "must be liberally construed, in order to effectuate [its] broad remedial purpose" and avoid "perpetuat[ing] the very evils to be remedied." *Id.* at 162; *see also Moore*, 388 Md. at 452, *supra*.

---

[11] Although the *Alexander* court considered different facts than those present here, the principles of its holding are instructive here.

These components of *Alexander* inform the court's consideration of whether Plaintiff plausibly alleges a debt under the MCDCA. In view of the plain text of the statute, as well as the MCDCA's remedial purpose, the court finds that Plaintiff's theory of a debt—read reasonably broadly—is plausible, especially given the legislature's intent to protect a broader population of consumers. *Alexander*, 23 F.4th at 375. In view of the foregoing, and given the present posture of this case and record before the court, the court concludes that Plaintiff plausibly alleges a debt supported by a reasonable interpretation, and within the meaning, of the MCDCA.

Defendant also addresses Plaintiff's contention that EarnIn's structure creates a "practical" obligation to pay, arguing that such a basis for finding an obligation has no grounding in law. (ECF No. 43-1 at p. 6) (citing ECF No. 42 ¶¶ 50–55.) Defendant advocates for a formalistic approach—that because Plaintiff was "explicitly told"[12] he had no obligation to pay, there is no basis to conclude he incurred "debt." (ECF No. 49 at pp. 3–4.) But this, like Defendant's other arguments, ignores the structure and purpose of the MCDCA. *Mills*, 467 Md. at 162. While the merits of this legal question remain undecided, at this juncture, Plaintiff plausibly alleges the MCDCA applies to EarnIn's business model and that Plaintiff incurred "debt" through transactions with EarnIn within the meaning of the MCDCA. Defendant is free to renew its challenge at summary judgment.

[12] Importantly, this phrasing by Defendant slightly overstates the facts as alleged by Plaintiff. Drawing all reasonable inferences in Plaintiff's favor, while the Cash Out User Agreement does state that users "do not have an obligation to repay any of the Cash Out Services" and EarnIn "will have no legal or contractual claim or remedy against [users]," that statement is located on the sixth page of EarnIn's eight-page User Agreement. (ECF No. 43-3 at p. 6.) Plaintiff alleges that when users engage with the EarnIn app, they are immediately confronted with the preauthorization requirements and additional charges, but do not mention being affirmatively notified of this portion of the User Agreement. (ECF No. 42, ¶¶ 34-39, 50-57, 71.) Construing these facts in Plaintiff's favor, it is reasonable to infer that the placement of these prompts for fees and charges, in addition to the preauthorization requirements, implies the opposite of what the User Agreement states with respect to legal obligation.

***B. Plaintiff plausibly alleges the MCDCA definition of "collector" applies to Defendant.***

Next, Defendant argues the MCDCA does not apply to debt originators (creditors) like EarnIn. The MCDCA defines "collector" as "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction." MD. CODE ANN., COM. LAW § 14-202(b). That notwithstanding, Defendant's argument that Plaintiff's MCDCA claim does not apply to EarnIn rests on its contention that the court should apply the FDCPA definition, which defines "debt collector" as "any person who . . . regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Because doing so would contravene the intent of the Maryland legislature and instructive Fourth Circuit precedent, as explained below, the court declines to do so.

Defendant argues that because Plaintiff has pled under § 14-202(11) of the MCDCA, which incorporates substantive provisions of the FCDPA, the FDCPA's definition of "debt collector" controls. MD. CODE. ANN., COM. LAW § 14-202(11). Further, Defendant argues, the specific FDCPA violations alleged by Plaintiff under 15 U.S.C. §§ 1692e(5), 1692f(1) (and incorporated through § 14-202) specifically refer to "debt collectors." (ECF No. 43-1 at p. 7.) These incorporated sections of the FDCPA differentiate between "debt collector" and "creditor," signaling that the statute differentiates between debt originators and third-party collectors. (ECF No. 49 at pp. 7–8.) Accordingly, Defendant argues, the MCDCA's definitions cannot be applied to these provisions without rendering the remaining terms of the statute superfluous or adopting an absurd reading of the statute. *Id.*

Plaintiff rests on the Fourth Circuit's decision in *Alexander*, arguing that the MCDCA's partial incorporation of the FDCPA requires this court to apply the MCDCA's broader definition of "collector." (ECF No. 48 at pp. 10–12.) *See also Alexander*, 23 F.4th at 375–76. Plaintiff maintains that the MCDCA's definition of "collector" can be applied without doing violence to the language of the FDCPA. *Id.* at pp. 11–12. Further, Plaintiff argues that the text

and purpose of the MCDCA compels the court to apply only those FDCPA provisions that were intentionally incorporated by the legislature. *Id.* at p. 12.

As discussed above, in *Alexander*, the Fourth Circuit considered the relationship between the MCDCA and the FDCPA in a suit brought by a putative class of consumers against a mortgage servicer. 23 F.4th at 372. The court concluded that the Maryland legislature's intentional incorporation of §§ 804-12 of the FDCPA (the "substantive portions") and not its definition provision, § 803, is dispositive as to the definition of "collector" under the MCDCA. *Id.* at 375–76. In short, because the legislature chose not to incorporate the FDCPA's definition provision, the MCDCA's definitions applied even when the FDCPA's provisions were the basis for the MCDCA claim. The court determined that the MCDCA, in effect, "applies more broadly than the FDCPA." *Id.* (citing *Aghazu v. Severn Sav. Bank*, Civil No. PJM 15-1529, 2017 WL 1020828, at *8 n.21 (D. Md., Mar. 16, 2017)).

Defendant argues that *Alexander*'s holding does not reach the question of whether the MCDCA applies to creditors, since in *Alexander* it was undisputed that the mortgage servicer was a third-party collector. (ECF No. 43-1 at p. 8.) Defendant is correct on this factual point, but reading *Alexander*'s holding so narrowly would undermine those two fundamental principles of the court's reasoning outlined above: that the MCDCA is a remedial statute that should be interpreted broadly, and that the legislature was intentional when it defined the scope of § 14-202(11). Put differently, although *Alexander* dealt with a discrete factual issue, its reasoning is instructive here.

Defendant further argues that applying the MCDCA's definition of "collector" to §§ 1692e(5) and 1692f(1) would render superfluous the language in the incorporated provisions as a whole because the FDCPA distinguishes between "creditor" and "debt collector," and applying the MCDCA's definition of "collector" would effectively collapse those two definitions into one. (ECF No. 49 at pp. 7–8.) While the court is of course cautious to avoid

reading the MCDCA in a manner that would render terms superfluous or meaningless, *see Moore*, 388 Md. at 453, *supra*, deploying this tenet of statutory interpretation here as Defendant advocates would fail to effectuate the intent of the legislature, *see id.* at 453, and disregard the Fourth Circuit's reasoning in *Alexander* as well as this court's precedent, *see Alexander*, 23 F.4th at 375–75. Indeed, this court has previously found that the MCDCA applies to both creditors and debt originators, distinguishing it from the FDCPA. *See Parker v. Goldman Sachs Mortg. Co. Ltd. P'ship*, 596 F. Supp. 3d 559, 570–71 (D. Md. 2022) (declining to apply FDCPA definitions and including loan servicers within the MCDCA definition of "collector"); *Wells Fargo Bank, N.A. v. Scarlett*, Civil No. WDQ-12-3694, 2013 WL 4401315, at *2 (D. Md., Aug. 14, 2013) (finding that "[t]he MCDCA does not have an exclusion for originators" and therefore Wells Fargo was acting as a collector under the MCDCA) This court declines, at this stage of proceedings, to deviate from its prior interpretations and the legislature's intent that the MCDCA have broad remedial effect.

It is undisputed that EarnIn "originates the very advances" at issue in this case. (ECF No. 43-1 at p. 8.) And while the parties disagree as to whether those advances constitute debt, they concur that the advances were both originated by EarnIn and debited from Plaintiff's account by EarnIn. (*Id.* at p. 8; ECF No. 42 ¶¶ 48-49, 108–109.) As a result, Defendant fails to show that Plaintiff's MCDCA claim does not apply to it as a matter of law.

***C. Plaintiff plausibly alleges facts to support dual claims under the FDCPA.***

Finally, Defendants argue that Plaintiff has not pled sufficient facts to support the claims under two provisions of the FDCPA. Plaintiff alleges that Defendant violated 15 U.S.C. § 1692f(1), which prohibits "the collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." (ECF No. 42 ¶ 106.) Additionally, Plaintiff alleges that Defendant violated 15 U.S.C. § 1692e(5), which prohibits threatening "to take any action that cannot legally be taken." (ECF No. 42 ¶ 107.)

Defendant first argues that because the amounts debited from Plaintiff's account were "expressly authorized" by Plaintiff, these transactions are compliant with § 1692f(1) of the FDCPA. 15 U.S.C. § 1692f(1) (prohibiting "[t]he collection of any amount" unless the amount is expressly authorized by the agreement creating the debt or permitted by law). Second, Defendant argues that even if Plaintiff has sufficiently pled a claim under § 1692f(1), it must be dismissed as duplicative of the § 1692e(5) claim.

Defendant's first argument rests on the premise that, counter to this court's previous memorandum opinion (ECF No. 27), the MCLL does not apply to EarnIn and, therefore, the user agreements executed between Plaintiff and Defendant are valid and enforceable. (ECF No. 43-1 at pp. 9–11.) In other words, Defendant argues the executed agreements are valid because EarnIn is not subject to MCLL; accordingly, the agreements satisfy the FDCPA's "expressly authorized" exception to § 1692f(1). In turn, Defendant argues, EarnIn's alleged conduct does not violate § 1692f(1) and no reasonable grounds exist for such a conclusion even accepting the truth of the facts alleged. But this court found the precise opposite in its earlier opinion. There, the court found that then-Plaintiffs had plausibly alleged facts to support their claim that EarnIn is subject to MCLL. (ECF No. 27 at p. 10.) The court finds no reason to deviate from its prior holding on this matter here. (ECF No. 27.) It thus finds that Plaintiff plausibly alleges EarnIn is operating in violation of MCLL—and, therefore, any agreements between it and Plaintiff are plausibly "void and unenforceable." As a result, the "expressly authorized" exception is not presently satisfied. 15 U.S.C. § 1692f(1). (ECF No. 42 ¶ 108.)

Second, Defendant asserts the FDCPA does not permit claims under § 1692f based on the same factual assertions underpinning other FDCPA claims, and, therefore, Plaintiff's § 1692f claim must be dismissed because the Second Amended Complaint fails to state a distinct factual basis for that claim. (ECF No. 43-1 at p. 11.) Defendant cites *Archie v. Nagle & Zeller* to support this assertion. 790 F. App'x 502, 503 n.1 (4th Cir. 2019). In *Archie*, the Fourth

Circuit addressed in a footnote, but did not affirm or otherwise analyze, the fact that "some courts" have held that § 1692f "extends only to misconduct that is separate and distinct from other FDCPA violations." *Id.* Defendant cites *Contee v. Rushmore Loan Management Services LLC* for the same proposition, although *Contee* also reports that "some courts" have taken this approach without offering substantive analysis of the issue. Civil No. 23-0588-BAH, 2024 WL 4416877 at *4 (D. Md. Oct. 4, 2024). Given that neither court formally endorsed such a reading or approach, or provided substantive analysis as to same, the court is not persuaded that militates in Defendant's favor here.[13]

Indeed, the text of the statute and Maryland precedent undermine the notion that *Archie* sets a definitive rule. The statute provides a "non-exhaustive list of conduct that violates the section." *Id.* at *4 (citing *Hauk v. LVNV Funding, LLC*, 749 F. Supp. 2d 358, 366 (D. Md. 2010)). That non-exhaustive list, in addition to the general prohibitive statement drafted into § 1692f, "allows the court to punish any other unfair or unconscionable conduct not covered by the FDCPA." *Lembach v. Bierman*, 528 F. App'x 297, 303 (4th Cir. 2013); *see* 15 U.S.C § 1692f ("A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.") The flexibility built into the FDCPA contemplates a variety of tactics that are worthy objects of the statute's remedial purpose, including those that might not fit neatly into its terms.[14] Put differently, it is significant that the text and structure of § 1692f contain

[13] Defendant cites three cases from the District of Maryland as examples of courts adopting the requirement of separate and distinct facts for § 1692f claims. *Cooke v. Currington Mortgage Servs.*, 2018 WL 6323116, at *6 (D. Md. Dec. 3, 2018); *Jennings v. Dynamic Recovery Sols.*, LLC 441 F. Supp. 3d 106, 115 (D. Md. 2020); *Ramirez v. LVNV Funding*, No. 24-cv-2335-ABA, 2025 WL 1665388, at *4 (D. Md. June 12, 2025). *Cooke* states that "courts have limited" § 1692f claims by requiring separate and distinct facts, citing *Lembach v. Bierman*, 528 F. App'x 297, 304 (4th Cir. 2013), to support this assertion. (ECF No. 49 at pp. 8-9.) *See Cooke*, 2018 WL 6323116 at *6. The court does not offer any additional analysis or reasoning. *Jennings* similarly reiterates that courts "have limited" § 1692f claims in this way, citing *Archie* without expounding. *Jennings*, 441 F. Supp. at 115. *Ramirez* does the same. 2025 WL 1665388 at *4. Since none of these cases offer reasoning or argumentation supporting this reading of the FDCPA, they are minimally persuasive against the weight of the statute's structure, purpose, and legislative history.

[14] The legislative history of the FDCPA further supports a flexible reading of the statute. *See* S. Rep. No. 95-832, at 4 ("In addition to these specific prohibitions, this bill prohibits in general terms any harassing, unfair, or deceptive collection practice. This will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed"). It is significant that this Senate Report refers to "harassing, unfair, or deceptive conduct." The FDCPA codifies each of those three "types" of collection practices into §§ 1692d, 1692f,

both broad prohibitive "catchall" provisions as well as enumerated examples of violative conduct. The Fourth Circuit analyzed this aspect of the FDCPA in *Currier v. First Resolution Investment Corp.,* 762 F.3d 529 (4th Cir. 2014).

In *Currier*, the Fourth Circuit considered a dual § 1692f and § 1692e claim, and concluded the plaintiff had adequately stated a claim under both sections when she alleged the defendant corporation had filed and maintained an invalid lien on her property. *Id.* at 535–36. The court noted that the FDCPA generally prohibits "harassing, unfair, or deceptive collection practices." *Id.* at 536. These categories of conduct, the court reasoned, are "broad, potentially overlapping, and are not mutually exclusive." *Id.* Collection practices can be "misleading," "unfair . . . or . . . both." *Id.* So, while some courts may read these provisions as requiring distinct factual bases for each claim, others have reached the opposite conclusion based on a reading of the FDCPA "as a whole in light of its purpose." *Id.*

In view of the foregoing, the court is not persuaded that Plaintiff fails to plausibly allege violations of § 1692f(1) and § 1692e(5).

## IV. CONCLUSION

For the reasons set forth herein, by separate order, the Motion (ECF No. 43) shall be denied.

August 25, 2026

/S/

Julie R. Rubin
United States District Judge

and 1692e, respectively. 15 U.S.C. §§ 1692d, 1692f, 1692e. Discussing them comprehensively suggests that Congress imagined some degree of overlap among these claims.